ADRIAN RENS v. THE CITY OF GRAND RAPIDS.

*Pleading —Recoupment — Municipal corporations — Contract for improvement of street—Power of city surveyor—Charter of Grand Rapids.*

| 73 | 237 |
| 106 | 420 |
| 73 | 237 |
| 108 | 678 |
| 73 | 237 |
| 115 | 503 |
| 73 | 237 |
| 157 | 335 |

1. Damages *not* growing out of the contract under which the plaintiff claims cannot be recouped in a suit thereon. *Molby v. Johnson*, 17 Mich. 382.

   So *held*, where after the full performance of a contract for improving a street, but not within the, time fixed for such performance, the final account for the work done, certified by the city surveyor, was approved by the board of public works, after which the contractor brought suit upon an alleged agreement with the surveyor for extra work, made after the execution of the first contract, and the city sought to recoup damages for its non-performance within the stipulated time.

2. Persons dealing with a municipal corporation through its officers must at their peril take notice of the authority of the particular officer to bind the corporation, and, if his act is beyond the limits of his authority, the municipality is not bound.

3. The city surveyor of Grand Rapids has no power to make contracts binding upon the city for the improvement of its public streets.

4. Where a contract for the improvement of a city street reserved the right to lay or relay water-pipes and sewers during the progress of the work, the fact that by the exercise of such right the contractor was obliged to haul the dirt a longer distance is no consideration for a promise to pay for such extra haul.

5. Where by the terms of a contract for the improvement of a street it was agreed that the city surveyor should estimate and

decide the additions and deductions to be made to or taken from the contract price in consequence of any changes, additions, or deductions, which duty was performed, and the amount fixed and reported to and approved by the board of public works, the contractor is bound by such determination, in the absence of fraud or unfair dealing on the part of the surveyor.

6. The city surveyor and board of public works of the city of Grand Rapids have no power to make contracts for the improvement of streets, except under the direction of the common council, and the city can in no way be made liable for such improvements, unless the same are made under contracts approved by the council. Local Acts of 1877, p. 121.

Error to superior court of Grand Rapids. (Burlingame, J.) Argued October 31, 1888. Decided January 11, 1889.

*Assumpsit.* Defendant brings error. Reversed, without a new trial. The facts are stated in the opinion.

*J. W. Ransom,* for appellant.

*Tatem & Quinsey,* for plaintiff.

[The points of counsel are fully stated in the opinion.— REPORTER.]

LONG, J. This action is in *assumpsit* on the common counts, brought in the superior court of Grand Rapids. Plaintiff had judgment for $700. Defendant brings error.

It appears that on June 5, 1886, plaintiff entered into a written contract with defendant for the improvement of Ellsworth avenue, a public street of the city, from the south line of Fulton street, for the sum of $9,720, and agreed to prosecute the same with all due diligence, and finish and complete the same, on or before September 1, 1886, to the full satisfaction of the board of public works, and according to the plans and specifications of

the work, which were made part of the contract, and annexed thereto.

The claim of the plaintiff is that he fully completed all the work under this agreement, and that such work was accepted by defendant, and paid for in full; that several months after this contract was made, and a large part of the work performed, an agreement was entered into between him and defendant, through the city surveyor, for extra work outside of the contract, and for which this suit is brought; and that no part of the work for which suit is brought was contemplated by or done under the contract. This agreement for such extra work and material, made with the city surveyor, was not in writing, but under it plaintiff claims to have done the work and furnished the material mentioned in his bill of particulars.

The claim in the bill of particulars is:

| | |
|---|---:|
| To hauling 8,500 yards of dirt 450 feet | $850 00 |
| To 48 loads of stone delivered to defendant | 96 00 |
| To 84 loads of gravel delivered to defendant | 42 00 |
| To 224 loads of screened gravel delivered | 224 00 |
| To excavating and grading 35 feet of Cherry street | 48 00 |
| To excavating and graveling 15 feet of Williams street | 35 00 |
| To paving and graveling on Waterloo street | 31 00 |
| To 120 days' labor | 180 00 |
| Total | $1,506 00 |

Upon filing this bill of particulars defendant pleaded the general issue, and gave notice:

1. That if the work was done and materials furnished as claimed, it was so done and furnished under and by virtue of such special contract in writing, made on June 5, 1886.

2. That defendant has performed the contract on its part, and paid the full contract price.

3. That plaintiff did not finish and complete said work on or before September 1, 1886, but, on the contrary, did not finish and complete the same until the month of July,

1887, to the damage of defendant $1,000, which sum defendant will recoup on the trial.

4. That by the terms of the contract the time specified for the completion of the work was declared to be material, and of the very essence thereof, and that for each and every day the contract should remain unperformed after the time named therein for its performance it was stipulated and agreed that the sum of $10 might be deducted from the amount to be paid by defendant thereon, and that amount should not be paid by defendant, and also, in addition thereto, the amount of the *per diem* of the inspector employed to oversee the work might be deducted; that such inspector was employed by defendant until the completion of said work, and all the time the same was going on; that by reason of the non-performance of said contract within the time agreed the said defendant has suffered damages, in that it has been obliged to and has paid out for the inspection of said work, to an inspector thereof, the sum of $300 for inspection during the time elapsing between the time the contract should have been performed by its terms and the time it was actually completed, to wit, a period of eight months,—all which inspection account and said $10 per day, amounting to $3,000, are valid and subsisting counter-claims and set-offs against the claim of plaintiff, etc.

The mode and manner in which contracts for public improvements of the nature of the one which defendant claims is involved in this case should be made, carried out, and paid for is regulated by the provisions of the charter and board of public works act of said city. It is provided by this act that the common council must first determine that the improvement is a necessary public improvement. The board of public works thereupon determines the kind and quality of the material to be used, estimates the probable cost, prepares the necessary plans and specifications, and reports such estimates to the common council as a basis for assessing or otherwise raising the funds to carry on and complete such work. Such work must be done under the direction and supervision of the board of public works, and upon contracts and

under plans and specifications prepared by the city surveyor, and approved by such board, and the moneys raised or appropriated by the council for such purposes shall be expended by said board, so far as necessary, upon estimates made by the board and reported to the council in accordance with such contract; and no money shall be drawn from the city treasury except upon orders of the council, and such contract shall first be submitted to the council before adoption and execution. Local Acts of 1877, No. 339, § 9.

The material parts of the contract for the improvement of Ellsworth street are that—

"Said first party does hereby agree with said party of the second part to improve Ellsworth avenue, and furnish all the materials necessary therefor, and do all the work incident thereto, and furnish all the material for such incidental work, and to construct said work as to material, size, and every other particular in accordance with the plan, specifications, and profile relative thereto, now on file in the office of the board of public works for said city," etc.

"The party of the second part reserves the right to change any portion of the work from time to time, and to make all necessary additions thereto or deductions therefrom. And it is mutually agreed that the city surveyor shall estimate and decide the additions or deductions to be made to, or taken from, the price specified for the work in consequence of such changes, additions, or deductions.

"And the party of the first part will commence said work on June 12, 1886, and prosecute the same with all due diligence, and finish and complete the same, on or before September 1, 1886, to the full satisfaction of the board of public works, for the sum of $9,720; that said first party shall not be entitled to demand or receive payment for said work or material, or any portion thereof, until the funds to meet such payment shall have been collected and paid into the city treasury, upon assessments made, and to be made, for the doing of said work, so the city of Grand Rapids shall not be liable to advance.

73 Mich.—16.

any money for the doing of said work, or any portion thereof, save from the special fund and assessment aforesaid.    *    *    *    *    *    *    *    *    *    *

"And it is expressly agreed that the time named for the completion of this contract is material, and of the very essence of this contract, and that, for each and every day the contract shall remain unperformed after the time named herein for the performance thereof, the said board of public works may, in its discretion, deduct the sum of ten dollars from the amount to be paid by said second party on this contract, and said amount so deducted shall not be paid by the second party; and, in addition thereto, may deduct the amount of the *per diem* of the inspector employed to oversee the work."

The specifications referred to are annexed to the contract, and made a part thereof. These specifications, among other things, provide:

"*Reservation.* The city reserves the right to lay or relay any or all necessary water-pipes or sewers during the progress of the work."

And also:

"*Extra Work.* No extra work is to be done, except upon a written order from the city engineer, which order shall state the amount and character of the work contemplated, and which shall be presented to the board of public works, together with the claim for payment, at the next regular meeting of the board following the completion of the work thus ordered."

The claim made by the plaintiff on the trial in support of the first item contained in his bill of particulars was that sometime in the fall of 1886 the city let a contract for the laying of a water-main along Ellsworth avenue, and the excavation of which prevented and hindered him from taking the dirt on a direct route to the dumping ground, so that he was compelled, in making his excavations on said avenue, to haul the same some 450 feet further than was contemplated at the time of the execution of the contract, and for this extra haul

the city surveyor agreed to make compensation ; that he hauled some 8,500 yards of dirt, the hauling of which was worth $850.

Plaintiff, on his examination as a witness on the trial, testified, in response to a question from his own counsel in reference to this charge:

"Well, I told the city surveyor that I couldn't use my own street there, and he said, 'That is all right, because Mr. Collins has got a big job there, and you drive your dirt through the alley, and I am going to pay you for it.'"

Witness further testified that the surveyor did not state how much he would pay. This is the only testimony given upon the part of the plaintiff showing, or tending to show, any contract or agreement by the surveyor, or any other of the officers of the city, to pay plaintiff for extra work in hauling this dirt by reason of laying this water-pipe.

The claim upon the part of the defendant was that no such arrangement or agreement was made by the city surveyor with the plaintiff. The city surveyor was called as a witness, and testified in behalf of defendant that soon after Collins commenced laying the water-main he was upon the work, and saw the plaintiff hauling the dirt through the alley, and he then asked plaintiff why he did not put a bridge across the ditch, and plaintiff responded, "That's all right," and that was the only reply he made; that the ditch made for the laying of this water-main could have been bridged at an expense of $2.50. The city surveyor further testified that sometime in July plaintiff came in with his books, and talked about this haul of dirt; that he afterwards made an estimate of the extra cost of the haul, and reported the same to the board of public works, and they allowed plaintiff the sum of $200.10; that this was allowed, with some

other items plaintiff claimed for as extra work, and an order drawn therefor. It appears from the testimony of the city clerk that the plaintiff knew of this order, and refused to take it.

The following is a copy of the final account, as submitted by the city surveyor, upon which the order was drawn:

*City of Grand Rapids,*

TO A. RENS, DR.,

To improving Ellsworth Avenue.

| | Dr. | Cr. |
|---|---|---|
| To contract price | $ 9,720 00 | |
| " 60 cubic yds. screened gravel, @ $1 00 | 60 00 | |
| " 15 loads stone, @ $2.00 | 30 00 | |
| " 7 teams ½ day, @ $3.00 | 10 50 | |
| " 14 men ½ day, @ $1.50 | 10 50 | |
| " 18 sq. yds. stone paving @ $ .30 | 5 40 | |
| " allowance for added cost of contractor, on account of re-laying water-main, and connecting services with the same | 200 10 | |
| Total | $10,036 50 | $10,036 50 |
| By orders paid | | $9,782 05 |
| " 76 cubit yds. excavation, @ 23c | | 17 48 |
| | | $9,799 53    9,799 53 |
| Leaves due contractor | | $236 97 |

It appears that the board of public works approved such final account, and an order was drawn for such balance in favor of plaintiff. It is not claimed that the plaintiff expressed himself satisfied with such statement, which was made up by the city surveyor from his own books, and statements made by plaintiff, though no amount was agreed upon for this haul. The city surveyor testified further, in relation to this haul:

"I gave him no direction or authority to travel upon any particular line. He might use his own discretion as to where he would go, but we would pay him for what

extra trouble was necessary in this work; not the travel, perhaps, that might have arisen, but what was necessary. If he had seen fit to go around by Ionia street, and back to the dumping ground, it would have made no difference. I shouldn't have allowed him for it."

On the cross-examination of plaintiff, his attention being called to the question why he did not put a bridge across the ditch then excavated for the water-main, he stated it was because the city surveyor promised to pay for the haul through the alley, and that he was afraid it would make his bondsmen liable on his contract about its being there nights; that he had no talk with the city surveyor about the bridge, but relied upon his promise to pay for the haul.

No contention is made but that the original contract, entered into on June 5, 1886, was fully completed by the plaintiff, and the work accepted by the board of public works, but it is not claimed that it was so completed within the time provided in the contract, nor until the latter part of July, 1887. It is evident, however, that some portion of this delay was occasioned by the slow progress made by the parties having the contract from the board of public works in laying the water-mains along Ellsworth street. The plaintiff had no control over this part of the work, and at the time of the approval of the work by the board of public works no claim was made by it that any deduction should be made from the contract price by reason of the work not being completed within the time specified in the contract, and no claim was then made, nor is any claim now made, that the work was not done in all respects in accordance with the contract. The board of public works not only expressed themselves as satisfied with the work, and the time within which it was completed, but, on the recommendation of the city surveyor, allowed the

item of $200.10 for this extra haul, as well as other items for extra work. Under these circumstances, the city would be estopped from setting up any claim for damages by way of recoupment to plaintiff's claim by reason of the failure to complete the work in the time provided by the contract. The damages sought to be recouped do not grow out of the contract under which plaintiff claims, and therefore could not be recovered in such action. *Molby v. Johnson*, 17 Mich. 382.

The plaintiff's action is brought on the common counts in *assumpsit*. The claim made on the trial is, so far as it relates to the first item in the bill of particulars, that having this contract with the city for the improvement of Ellsworth avenue, and while at work thereon, in accordance with the contract, the city let a contract to other parties to lay a water-main along Ellsworth avenue, and that by reason of excavations made by such parties to lay such water-main the plaintiff was compelled to haul the dirt in making such improvements a much longer distance than he otherwise would, to reach the dumping-ground for this dirt, and that the city surveyor promised and agreed to pay him for such extra haul. Counsel for plaintiff contend that this agreement was binding upon the city, though not made in writing, nor approved by the board of public works; that the city surveyor has power, under the terms of the act establishing the board of public works and the city charter, to make such con-tracts binding upon the city. The act (Local Acts of 1877, p. 452) provides:

"The common council of the city of Grand Rapids is hereby authorized to employ some suitable person as sur-veyor, as provided in the charter of said city, and such assistants as necessary, who shall receive such compensa-tion for their services as shall be provided and fixed by said common council. Such surveyor shall perform such services as may be required by the board of public works

or common council of the said city of Grand Rapids."

The charter provides (3 Local Acts of 1873, p. 58):

"The city of Grand Rapids, and not the board of public works, shall be liable on all contracts made by the board of public works in accordance with law," etc.

Upon the plaintiff's own theory, this was not a contract binding upon the city for the extra haul. There is no power under this act, or under the charter of the city, given to the city surveyor to make contracts binding upon the city in the improvement of its public streets. Persons dealing with a municipal corporation through its officers must at their peril take notice of the authority of the particular officer to bind the corporation. If his act is beyond the limits of his authority, the municipality is not bound. *Taft v. Pittsford*, 28 Vt. 286; *Bridgeport v. Railroad Co.*, 15 Conn. 475; *Hodges v. Buffalo*, 2 Denio, 110; *Mackenzie v. Baraga Tw'p Treas.*, 39 Mich. 554.

The contract under which Ellsworth street was to be improved by plaintiff provided, in terms, that the city reserved the right to lay or relay any and all water-pipes or sewers during the progress of the work. If the plaintiff was damaged by the laying of these pipes, in that he was compelled to make longer hauls of the dirt taken out under the terms of his contract, and therefore the cost of executing his contract was greatly increased by the wrongful act of the city in the manner of putting down the water-mains or in the time employed therein, on his action brought to recover such damages no recovery could have been had under the common counts of his declaration. No such claim, however, is made, but the plaintiff seeks to recover upon the theory of a contract binding upon the city, made through the city surveyor. Even if the city surveyor had power to bind the city upon contracts for the improvement of the streets, there was no consideration for such a contract as.

the plaintiff claims. Plaintiff was to improve this street, and do it in accordance with the plans and specifications. The city reserved the right to lay or relay any and all water-pipes and sewers therein during the progress of the work. It became necessary, as it appears, to lay these water-pipes while these improvements were going on. Trenches were dug by Mr. Collins, the contractor, for laying them, and the plaintiff says he was compelled to drive a longer distance to dump the dirt by reason of these trenches, because he was afraid it would make him liable on his bond if he put a bridge across these trenches, and went over them to the dumping ground. The right to lay these water-pipes was expressly reserved in the contract, and the fact that plaintiff was made to haul a greater distance by reason of it would not be any consideration for a promise to pay for such haul. The subject-matter embraced nothing more than plaintiff was compelled to do by the terms of his contract. An agreement, having for its basis the sole consideration that the party will perform a contract previously entered into according to its terms, and not violate it, is no valid consideration to support such agreement. The plaintiff was also bound to take notice of the terms of his contract limiting the power of the city surveyor. The contract provides:

"No extra work is to be done except upon a written order from the city engineer, which order shall state the amount and character of the work contemplated, and which shall be presented to the board of public works, together with the claim for payment, at the next regular meeting of the board following the completion of the work thus ordered."

The plaintiff had no right of recovery under the circumstances here shown for the first items in his bill of particulars, and the court below was in error in submitting that question to the jury. No claim is made here

that there were any proofs given on the trial showing any right of recovery for the last item in the bill of particulars, and we need not discuss that.

The plaintiff, under the circumstances here stated, cannot maintain this action upon the other items in his bill of particulars. By the terms of the contract it was agreed that the city surveyor should estimate and decide the additions and deductions to be made to or taken from the price specified in the contract in consequence of any changes, additions, or deductions. It appears that the city surveyor did estimate and decide in relation to this extra work and material, fixing the value of the stone and gravel used, the cost of excavating and graveling Cherry street, excavating and graveling on Williams street, and paving and graveling Waterloo street, at the sum of $116.40. This amount was reported by the city surveyor to the board of public works, there approved, reported to the common council, and an order drawn in favor of plaintiff for the amount. These questions were by the terms of the contract to be submitted to the arbitrament of the city surveyor, and the plaintiff is bound by his determination, as no fraud or unfair dealing is claimed. *Burnham v. Milwaukee,* 69 Wis. 379 (34 N. W. Rep. 389); *Wright v. Forrestal,* 65 Id. 341 (27 N. W. Rep. 52.)

The city surveyor has no power outside of the original contract to bind the city of Grand Rapids for work and material in the improvement of its public streets. These improvements can only be made when the common council shall first determine their necessity. The board of public works determine the kind and quality of the materials to be used, estimate the cost and expense, and report the same to the common council for adoption. The city surveyor and board of public works have no power to make contracts for the improvement of streets, except under the direction of the common council, and

the city can in no way be made liable for such improvements, unless the same are made under contracts approved by the council.  Local Acts of 1877, p. 121.

The expense of these improvements was to be defrayed by a special assessment, and the plaintiff, by the terms of his contract, agreed to look to those special assessments for his pay.  The necessity for this extra work and material grew out of the changes and additions made in the original contract for the improvement of Ellsworth avenue.  The city surveyor was named in the contract as the person to determine the value of such work and material.  This he has determined, and for the amount the common council has drawn an order.  The plaintiff is entitled to have the amount so fixed and determined by the city surveyor, being the sum of $316.50, over and above his original contract.  This amount the city is ready to pay in the order drawn in favor of plaintiff, and it is bound, under the circumstances, to do no more.

The judgment of the court below must be reversed, with costs of both courts to defendant.  No new trial will be ordered.

The other Justices concurred.