JOHN CASHMAN *vs.* CITY OF BOSTON.

Norfolk.    March 27, 1905. — January 5, 1906.

· Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Municipal Corporations.*

A city engineer has no authority to waive provisions in a contract with the city for the furnishing of work and materials, that any claim of the contractor for loss or extra cost shall be presented within a certain time in an itemized bill with vouchers and a copy of the order under which the cost was incurred, and that where these requirements have not been complied with no sum shall be allowed for extra work or extra materials without the approval in writing of the mayor. ·'

CONTRACT to recover compensation for extra work and materials furnished to the city of Boston in connection with work done under a contract in writing dated October 19, 1901, to build retaining walls on Carleton Street in Boston and complete them before July 1, 1902. Writ dated April 15, 1903.

At the trial in the Superior Court before *Bell,* J. the material facts were admitted, and no evidence except the contract was introduced.

The fourth article of the contract and the material portion of the sixth article are quoted in the second paragraph of the opinion.

Article third of the contract was as follows: " Article 3. The contractor shall conform to all determinations and directions of the engineer relating to the commencement of the work, the order or manner of doing the work, the proper interpretation of the specifications, plans and drawings, the fitness of any of the employees or the number thereof, the suitableness, amount, quality and value of anything done or used on the work, any injury, loss or extra cost sustained by the contractor and the amount thereof, or any expense, loss or damage incurred by the city and the amount thereof, in the doing of the work, or the date of the completion of the work, and the superintendent shall be deemed the referee of both parties to make such determinations and directions ; and the contractor shall permit the superintendent and engineer and persons designated by either of them

to enter upon and inspect the work at all times and places, and shall provide proper facilities for such entry and inspection."

Section four of the specifications began as follows: "Piles. New, sound and straight spruce piles not less than six inches in diameter at the point, and of such length that when cut off they will be not less than 30 feet long, are to be furnished and driven for foundations."

The following facts were agreed upon by the parties:

Sometime during the last of December, 1901, the city engineer directed the plaintiff to drive piles of a length greater than thirty feet, but the plaintiff refused to drive piles of this length, and soon after, about January 1, 1902, called upon the city engineer and directed his attention to the length of piles which were required to be driven and the requirements of the contract to furnish the piles in accordance with the provisions of section four of the specifications. The engineer at that time had directed the plaintiff to drive piles exceeding thirty feet in length, many of them as long as forty-five feet.

The plaintiff at that interview with the engineer refused to drive piles under the contract over thirty feet in length, and stated to him that if he was required to drive them any additional length it was to be with the understanding that he should receive reasonable compensation for the length over the thirty feet. Thereupon the engineer told the plaintiff to go on with that understanding, saying to him in substance that the plaintiff would thereby waive no rights and that the whole matter of construction of the contract would, after the completion of the work, be presented to and passed upon by the law department of the city.

Pursuant to this interview the plaintiff on February 20, 1902, wrote to the engineer as follows: "As you suggested some time ago when I was at your office, I will go ahead with the Carleton Street work, and furnish and drive any length pile you require, but I shall claim extra pay for all piles driven to a greater depth than thirty feet below cut-off or grade 5 as shown on plan, as my contract calls for; also compensation for the extra expense I have been to changing pile driver, taking away thirty foot piles and pumping on account of longer piles being required than I agreed to furnish according to my contract."

This letter was received by the city engineer, and no reply to it ever was sent.

At the date of this letter there were about three hundred and forty piles driven, all of which were more than thirty feet in length and most of them over forty feet in length. During the progress of the work a daily account was kept of the number and length of piles driven, and this showed lengths for the whole work averaging substantially forty-one feet.

On October 11, 1902, an assistant engineer in the employ of the defendant sent to the plaintiff a letter asking him to send any bills for extra work on the Carleton Street wall.

Pursuant to this letter on November 25, 1902, the plaintiff made and sent to the defendant the bill in suit, and there was no dispute as to the amount which the plaintiff was entitled to recover, if anything.

The city engineer by his inspectors and assistants directed the driving of the piles, and whatever the plaintiff did was done under the direction of the city engineer or his assistants.

The plaintiff never sent or delivered before the fifteenth day of the month following the month in which the alleged extra work was performed to the superintendent of streets and the engineer an itemized bill of his claim for extra work or for any injury or loss with a full statement in writing of the causes thereof, or any itemized bill or vouchers for the extra cost with the order, or a copy of the order by authority of which the cost was incurred, and never sent any other demand or bill save the one already referred to dated November 25, 1902, and annexed to the declaration. No request or demand for any other account ever was made of the plaintiff by the defendant or its representatives.

It was not contended that the plaintiff had failed to comply with any terms or provisions of the contract except those relating to extra work.

The defendant contended that the plaintiff had failed to comply with the requirements of articles fourth and sixth of the contract and consequently could not maintain this action.

The plaintiff contended that if article sixth and the other provisions of the contract referred to were applicable to the work in suit, any requirement for compliance with those provisions as

to the claim in suit was complied with by the plaintiff or waived by the acts and conduct of the defendant's representatives.

If upon the facts so far as competent the jury would be authorized to find compliance with or waiver of article sixth or other provisions of the contract, proposals and specifications therein referred to, relating to a claim for extras, a verdict was to be directed for the plaintiff in the sum of $4,218.85 ; otherwise, a verdict was to be directed for the defendant.

The judge directed a verdict for the plaintiff in the sum of $4,218.85, and, at the request of the defendant, reported the case for determination by this court. If upon the facts so far as competent the jury would be authorized to find a compliance with or a waiver of article sixth or other provisions of the contract, proposal and specifications therein referred to, relating to claims for extras, the verdict was to stand; otherwise, such disposition of the case was to be made as the decision of this court upon questions of law might require.

The case was submitted on briefs at the sitting of the court in March, 1905, and afterwards was submitted on briefs to all the justices.

*A. L. Spring,* for the defendant.

*J. E. Cotter & J. P. Fagan,* for the plaintiff.

HAMMOND, J. The only question is whether the facts set out in the report would warrant a finding by the jury of a compliance by the plaintiff with, or a waiver by the defendant of, the sixth article or other provisions of the contract relating to " claims for extras."

The provisions in the contract relating to this matter are contained in the fourth and sixth articles of the contract. The fourth is as follows: " The contractor, if he sustain any injury or loss or extra cost, for which the city is responsible, shall, before the fifteenth day of the month following a month in which the same is sustained, deliver to the superintendent and the engineer an itemized bill of such injury or loss, with a full statement in writing of the cause thereof, and an itemized bill and vouchers for the extra cost, with the order, or a copy of the order, by authority of which the cost was incurred." The sixth article provides that no sum shall be allowed for extra labor or extra materials " in cases where the provisions of

article four have not been complied with, unless the mayor shall, in writing, approve thereof." There is ample evidence to warrant the conclusion that the engineer had waived this provision so far as he had the power to do so. But the difficulty is that he had not the power. By the third article of the contract he had full authority to interpret the specifications, but he had no power to waive the terms of the contract as to " claims for extras."

The mayor was the only officer authorized to waive the noncompliance with the provisions of the fourth article, and he could do that only by an approval in writing. There are obvious reasons why claims for extra labor or material should be promptly and clearly presented by the contractor, and that the waiver of such a provision should not be left to any other than the chief executive officer of the city. Such provisions are intended to protect the public treasury, are easily complied with by the contractor, are reasonable in their nature and are to be enforced. The case is clearly to be distinguished from *Sheridan* v. *Salem*, 148 Mass. 196, upon which the plaintiff relies. In the present case the majority of the court are of opinion that there is no evidence of a waiver by the defendant acting through its city council or other general officers, nor by any officer having the power to waive.

*Judgment for the defendant.*