SCHNEIDER v. CITY OF ANN ARBOR.

1. CONTRACTS—PERFORMANCE—ESTIMATE OF AMOUNT.
    One contracting to furnish all the labor or material which may be required for a given purpose is not relieved of the obligation of his contract because the amount exceeds or falls short of the estimate.

2. MUNICIPAL CORPORATIONS—SEWER CONTRACT—CHANGE OF PLANS—AMOUNT OF EXCAVATING—WARRANTY.
    The exhibition to a contractor, before making a bid for sewer excavation work, of original blueprints prepared by a city engineer, does not constitute a warranty that the exact amount of excavation there delineated would be done in the actual carrying on of the work, where the contractor is to be paid for whatever excavation is done in each particular class at price named in such class, and the contract itself contemplates that there may be changes in the plans and work done.

3. SAME—DETERMINATION BY CITY ENGINEER—CONCLUSIVENESS—FRAUD.
    The provisions of a sewer excavation contract providing that all estimates, measurements, and determinations of quantity shall be made by the city engineer, and that his estimates and measurements shall be final and conclusive between the parties, are binding in the absence of fraud or bad faith.

4. SAME—EXTRAS—FRAUD—BURDEN OF PROOF—EVIDENCE.
    In an action by a contractor against a city to recover for extra work done and material furnished on a sewer excavation contract, held, that the burden of proof was upon plaintiff to show fraud or bad faith on the part of the engineer in making his estimates and computations.

5. SAME—BOARD OF PUBLIC WORKS—POWERS.
    The board of public works of the city of Ann Arbor is not the governing body of the city, but is a board of limited powers.

6. SAME—PUBLIC OFFICIALS—POWERS—NOTICE.
    Persons dealing with public officials must take notice of their powers.

7. SAME—SEWER CONTRACT—WRITTEN ORDER—EXTRAS.

> Where a contract for sewer excavation work with a city provided that a written order by the board of public works for extra work must be obtained, there could be no recovery for extra work and material except by compliance with such provisions.

8. CUSTOMS AND USAGES—EXPRESS CONTRACT—EVIDENCE—ADMISSIBILITY.

> Evidence of usage and custom is inadmissible to operate against an express contract.

9. MUNICIPAL CORPORATIONS—SEWER CONTRACT—EXTRAS—WRITTEN ORDER—WAIVER.

> There is no waiver of the provisions of a contract for sewer excavation work requiring a written order by the board of public works for the doing of extra work before a claim for such work shall be allowed, where, when the contractor was directed to do the work involved, he asked for a written order from the board on the ground that it was an extra, and the city engineer insisted that it was within the specifications.

10. SAME—SEWER CONTRACT—BREACH—EXTRAS.

> There is no breach of a sewer excavation contract by a city so as to authorize a recovery by a contractor for an extra amount of excavation and refilling by gravel necessitated by seepage of water into trenches dug by him, where the city simply delayed 20 or 30 minutes in laying the pipe in the trenches and it was not contemplated by the contract that the pipe should be laid within the distance the contractor was required to keep in advance of pipe-laying and it was impossible to lay the pipe within such distance without seepage.

Case-made from Washtenaw; Kinne, J. Submitted January 11, 1917. (Docket No. 101.) Decided March 30, 1917.

Assumpsit by Emanuel L. Schneider against the city of Ann Arbor for a balance due under a sewer contract. Judgment for defendant on a directed verdict. Plaintiff brings case-made. Affirmed.

*Arthur Brown* (*E. R. Sunderland,* of counsel), for appellant.

*Frank B. Devine,* for appellee.

FELLOWS, J.   In the summer of 1913 the defendant city contemplated the construction of two sewers in districts Nos. 56 and 60.   On August 20th plaintiff submitted a proposal in which he offered to do all the excavation and back-filling at the following prices per lineal foot:   Class 1, for trenches less than 6 feet deep, 35 cents; class 2, for trenches between 6 to 8 feet deep, 50 cents; class 3, for trenches between 8 and 10 feet deep, 80 cents; class 4, for trenches between 10 and 12 feet deep, 95 cents.   On August 28th, he entered into a contract with the city to do this work at the figures named.   There are many provisions and details in the contract.   Those deemed important to an understanding of the case will be given as we proceed.   After the work was completed he was given a warrant for the sum of $4,039.70, the amount certified by the engineer.   Later he filed his claim against the city for an additional sum claimed by him to be due, and upon refusal to pay brought this suit. The trial judge directed a verdict for the defendant, and the case comes to this court for review on case-made.

The plaintiff insists upon a recovery upon two characters of claims which are covered by three special counts in his declaration and which we shall discuss in their order.   Under the first count he claims the right to recover $688.45 beyond what he has already received for the excavation and back-filling performed by him pursuant to the terms of the contract.   To sustain a recovery on this count plaintiff produced the blueprints prepared by the city engineer showing the proposed plans and profiles of district 56, which he claims he examined before making his bid; also an-

other set of blueprints prepared by the engineer, showing the elevations and levels of the sewer as actually constructed by plaintiff. The city engineer, who was called by plaintiff to identify these blueprints, on cross-examination, testified that the set of blueprints which plaintiff examined before he made his bid was prepared to give the board of public works and common council an idea of what the sewer would cost; that the elevation of the street, represented by a heavy line, was taken in the center, although the sewer is quite certain to be placed several feet one side or the other; that the sewers are actually constructed from pins set on one side or the other of the trench, and the constructor measures down from these pins to get the levels for the bottom of the trench. These pins are usually set on the high side of the trench. Testimony was also given by plaintiff that before he made his bid the city engineer informed him that the heavy line on the profile represented the surface of the ground at the center of the trench, and he so used it in making his general estimates. It also appeared that the city in all cases of sewer construction prepared "cut sheets" showing the actual depth measured down from the pins or stakes, which were placed along the side of the trench every 25 feet, and plaintiff was always furnished copies of these cut sheets. Plaintiff says he always understood he settled with the city in substantial accordance with the profiles, although he knew that the city engineer used the cut sheets in checking up the amount due under the contract. He also testifies that the grade pins were often placed below the level of the ground at the line of the trench, but that they were placed where he wanted them and were changed at his request. He gives evidence tending to show that, taking the original blueprints, which he saw before he made his bid, there was in class 1, 308 lineal feet of excavation; class 2, 3,193.07 lineal

feet; class 3, 3,496.60 lineal feet, and in class 4, 256 lineal feet. The changes in the levels actually made in the sewers altered the amounts of excavation in the respective classes as follows: Class 1, 83 lineal feet more; class 2, 843.93 lineal feet more; class 3, 989.9 lineal feet less; and class 4, 28 lineal feet less. Plaintiff then proved that the average depth of excavation in the classes as shown by the original blueprints differs from the average depth as shown on the later ones, and showed the amount of such difference, and on the basis of these averages, taking the original set of blueprints as exactly correct, he would have been required to have excavated under the terms of his contract 148,652.98 cubic feet, and at the price per lineal foot agreed upon in the various classes he would have received 3.19 cents per cubic foot; that, taking 3.19 cents per cubic foot as the basis of his compensation, and taking the number of cubic feet actually excavated under the changed levels, there would be due him $4,601.07 for excavating and backfilling, from which should be deducted the amount paid, and the balance would be due him on this count.

It is difficult to follow plaintiff through this maze of computations, impossible to follow his conclusions arrived therefrom, that this contract, which expressly provides for payment for excavations per lineal foot, can, by any system of mathematical calculations, be transferred into or construed to be a contract to pay for excavations at 3.19 cents per cubic foot or any other sum per cubic foot, or that cubic foot excavation can be used to measure his compensation or his damages in this action. It is urged in the brief that plaintiff made very low prices in one of the classes expecting to make up the deficiency in other classes, and that he could afford to do the work in one class without a profit when he could make up in another class. The system of computations used by plaintiff as a

basis for his bid is unimportant. The fact that is important is that he contracted to do the excavating in this sewer district at certain figures per lineal foot, and he contracted to do all of it, whether it be much or little. One contracting to furnish all the labor or material which may be required for a given purpose is not relieved of the obligation of his contract because the amount exceeds or falls short of the estimates. *Wolff* v. *Wells Fargo & Co.*, 115 Fed. 32 (52 C. C. A. 626) ; *Callmeyer* v. *City of New York*, 83 N. Y. 116.

The exhibition to the plaintiff before he bid of the original blueprints prepared by the city engineer did not constitute a warranty that the exact amount of excavation there delineated would be done in the actual carrying on of the work. Whatever excavating plaintiff did in each particular class was to be paid for at the price named in that class; it was not a lump sum bid. The contract itself contemplated that there would be changes in the plans and work done. It was agreed therein:

"Should any change or alteration be made in the plans of said work or material be required whereby a diminution of the work to be done, or material to be furnished shall be occasioned, it is agreed by the parties hereto that a pro rata reduction from the moneys which shall or may be due or become due under this contract shall be made in accordance with the schedule of prices for such extra work and material in the proposal for the construction of such sewer work."

It was also provided in the contract:

"The sewer shall be located on the line shown on the plan of the work. This line whenever practicable, will be on the center line of the street. The board reserves the right to remove the line of sewer to the right or left whenever it shall deem a change of line desirable."

And the following was also agreed to:

"The board of public works shall have the right to make alterations in the line, grade, plan, form, or quality of the work herein contemplated, either before or after the commencement of the work. If such change diminish the quantity of the work to be done, it shall not constitute a claim for damages, or for anticipated profits on the work dispensed with. If the change increases the amount of work to be done, such increase shall be paid for according to the work actually done at the price or prices stipulated for such work in the contract."

Clearly this contract permitted the city to vary its plans, and upon such changes being made the plaintiff was to be compensated for the work actually done at the price agreed upon per lineal foot.

We do not understand that the plaintiff claims that the figures of the engineer as to the amount of excavation are inaccurate if the cut sheets are accurate and are a true basis for said figures. What we understand to be the claim is that the grade stakes were not sufficiently accurately set as to insure a correct result, either on the cut sheets or in the computations. The city engineer testified that these pins are usually set on the high side of the trench. Plaintiff says they were often placed below the level of the ground at the line of the trench, but they were placed where he wanted them and were changed at his request. Turning again to the contract, we find:

"The trench shall be dug by measurement from the witness stakes on the surface.

"The contractor will be furnished with the approximate depth of cutting before the digging is begun. The grade and line of the invert of the pipe will also be given at every twenty-five feet at the bottom of the trench on stakes to be furnished and set by the engineer."

This was what plaintiff contracted for, so far as measurements were concerned. But a complete answer to the claim of plaintiff that the engineer's fig-

ures should not be taken is found in the following provision of the contract:

"It is further agreed that all estimates, measurements, and determinations of quantities shall be made by the said city engineer and that his estimates and measurements shall be final and conclusive between the parties."

There is no evidence or claim of fraud or bad faith on the part of the city engineer in making his estimates and computation. The parties to this contract agreed upon him to finally determine as between them the quantities for which payment should be made by one, and received by the other. He was made by their agreement the final arbitrator, and his action cannot be reviewed by the courts, in the absence of fraud or bad faith. Such provisions are designed to prevent the possibility of disputes arising between the parties, and to avoid expensive and frequently ruinous litigation, and are uniformly upheld. *Lamson* v. *City of Marshall*, 133 Mich. 250 (95 N. W. 78) ; *Hanley* v. *Walker*, 79 Mich. 607 (45 N. W. 57, 8 L. R. A. 207) ; *Kihlberg* v. *United States*, 97 U. S. 398; *Rens* v. *City of Grand Rapids*, 73 Mich. 237 (41 N. W. 263). The burden is on the plaintiff to impeach the determination of the engineer if he claims fraud or bad faith. There is no evidence of either. The determination of the engineer is therefore final.

Under the second and third counts plaintiff seeks to recover for what is treated therein as extra work, each count referring to a separate sewer district, but the claim as to both districts is the same. The extra work is claimed to consist of excavating to a greater depth than required by the contract and filling in with gravel. This was required by the seepage of water into the trench. We shall have occasion to detail it at greater length hereafter. Plaintiff gave testimony tending to show that he was required to do this by the

engineer, that when directed to do the work he requested a written order from the board and was refused by the engineer, on the grounds that such work was required by the specifications. The contract contained the following provisions:

"Whenever ordered by the board in writing, the contractor shall excavate to such depth below grade as may be directed by the board, and the trench then brought to grade with such materials as the board may deem proper.

"The extra work to be paid for upon the engineer's estimate, but should the contractor excavate below the grade without written orders, he will be required to fill the excess of excavation with such proper materials as the board may direct, and to be done at his, the contractor's, own expense.   *   *   *

"The contractor shall also do such extra work in connection with his contract as the board may specially direct in writing, and in a first-class manner, but no claim for extra work shall be allowed unless the same was done in pursuance of a written order as aforesaid to do the work as such, and the claim presented at the first estimate after the work was done.   *   *   *

"Should any dispute arise respecting the true meaning of the drawings, specifications, plans, and profiles on any point, the decision of the city engineer of the city of Ann Arbor shall be final and conclusive upon the parties thereto."

The board of public works of the city of Ann Arbor is not the governing body of the city; it is a board of limited powers. Under the charter (section 136 of Act No. 331, Local Acts of 1889) it is provided:

"Said board of public works shall, after the said public improvements have been first duly ordered by the common council, have supervision and charge of   *   *   *   the construction, repair, and extension of all the main and lateral sewers and drains   *   *   * and shall, in addition thereto, exercise such other powers and perform such other duties in the superintendence, construction and care of public works and improvements as the common council may from time to time by ordinance direct."

Section 137 of the same act contains the following provision:

"And no contracts shall be let by the said board until duly authorized by the common council; and no expenditures for any purpose exceeding twenty-five dollars shall be made by the said board, except by consent of the common council."

It is fundamental that those dealing with public officials must take notice of their powers. *McBrian* v. *City of Grand Rapids*, 56 Mich. 95, 108 (22 N. W. 206); *Campau* v. *City of Detroit*, 106 Mich. 414, 418 (64 N. W. 336).

The provisions of this contract requiring the board's order to be in writing were salutary ones and are frequently ingrafted in the governing law of municipalities. It was said in *Condon* v. *City of Jersey City*, 43 N. J. Law, 452:

"The contract in the case in hand expressly provided that all alterations or additions should be specified in writing and approved by the committee on public buildings. Neither the alterations or additions, which constitute part of the extra work, nor the work alleged to have been done in consequence of mistake on the part of the architect were specified in writing. The above-mentioned provision in the contract, as well as that of the charter, was designed for the protection of the city, and they are safeguards which public policy requires should be strictly observed."

In the case of *City of Huntington* v. *Force*, 152 Ind. 368 (53 N. E. 443), it is said:

"It is further objected by appellant that the first and third paragraphs of the complaint are bad, because they do not show that the extra work and materials were performed and furnished upon orders in writing signed by the contractor and engineer, and approved by the common council, as required by the terms of the contracts, and the specifications attached thereto. This objection is well founded. We find nothing in the contracts which conferred on the city

engineer authority to alter the plans and specifications without the approval of the common council."

The case of *McManus* v. *City of Philadelphia,* 201 Pa. 619 (51 Atl. 320), had under consideration a provision of the charter of the city of Philadelphia requiring that municipal contracts be in writing. It was said:

"The very reason, too, of the law is, that municipal corporations should not be made answerable for money, on sentiment, but only for contract liability under the law. A strict adherence to this rule is the only protection which such corporations can invoke."

In the case of *Cashman* v. *City of Boston,* 190 Mass. 215 (76 N. E. 671), the court had under consideration a similar question, and it was said:

"The mayor was the only officer authorized to waive the noncompliance with the provisions of the fourth article, and he could do that only by an approval in writing. There are obvious reasons why claims for extra labor or material should be promptly and clearly presented by the contractor, and that the waiver of such a provision should not be left to any other than the chief executive officer of the city. Such provisions are intended to protect the public treasury, are easily complied with by the contractor, are reasonable in their nature, and are to be enforced."

The language of this court, speaking through Mr. Justice MONTGOMERY, in the case of *Campau* v. *City of Detroit, supra,* is quite in point. It was there said:

"In this case the plaintiff had but one contract with the city, and that was the one awarded to him after competitive bidding. If the demand of the superintendent was not justified by the contract, he had the right to refuse to proceed, but had not the right to demand compensation other than that provided by the contract. He was bound to know that neither the superintendent nor the board had authority to bind the city by any new contract with him, or by any substantial deviation from the contract, which he had

195 Mich.—39.

executed. If he proceeded, he must be held bound by the terms of the contract, and limited to the compensation provided thereby. Any other rule would open the door in every case to an evasion of the statute; for, when a substantial departure is made, if it may be lawfully made by the board and bind the city, the compensation provided by the contract is no longer controlling, and a deviation which a jury may say is substantial would entitle the contractor, in every case, to recover on the *quantum meruit.*"

For further cases bearing on the question under consideration, see *Chittenden* v. *City of Lansing*, 120 Mich. 539 (79 N. W. 797) ; *McBrian* v. *City of Grand Rapids, supra; Ely* v. *City of Grand Rapids*, 84 Mich. 336 (47 N. W. 447) ; *McCurdy* v. *County of Shiawassee*, 154 Mich. 550 (118 N. W. 625).

We conclude, therefore, that the parties were bound by the terms of this contract, and that plaintiff could not recover for extra work and material, except pursuant to its terms and in the manner therein provided. Nor do we think there is any evidence in the case to submit to the jury the question of whether the provisions as to the written order were waived. It is true he gave evidence tending to show that the board of public works delegated the power to change the contracts to the city engineer, and that it was the custom to permit the engineer to make such changes. It was said in *Burnham* v. *City of Milwaukee*, 100 Wis. 55, 73 (75 N. W. 1014-1020) :

"As before suggested, the referee seemed to appreciate the necessity of making some finding that would seem to nullify the positive requirements of the contract. He does not find that there is any waiver of this condition except as he finds the custom, and he attempts to overturn a positive contract by admitting evidence of the custom and making a finding of its existence. The rule is well-nigh universal that usage and custom are never allowed to operate against express contracts."

But, further, when the plaintiff was directed to do the work involved here, he asked for a written order of the board, on the ground that it was an, extra. The city engineer insisted that it was within the specifications. A waiver is:

"The act of waiving or not insisting on some right, claim, or privilege; a foregoing or giving up of some advantage which but for such waiver the party would have enjoyed." 40 Cyc. p. 252.

Surely the city did not waive its rights by insisting upon them.

Finally it is urged by the plaintiff that he is entitled to recover here for the claimed extra work and material as a measure of damages for the breach of the contract by the defendant. We have already stated that it is the plaintiff's claim that the extra amount of excavation and the refilling by gravel was occasioned by seepage of water into the trenches dug by him. He gave testimony tending to show that immediately after the machine used in excavation had completed its work the trench was in suitable condition to lay tile before the water got in by seepage; that it would be practicable to lay the tile within 6 or 8 feet of the machine, and if the laying of tile had been so done the water would not have gotten in; that the water came in within 20 or 30 minutes; that when the tile layers were back 30 to 50 feet from the machine, as they often were, the water got in and "made a regular mud of it," necessitating the putting in of the false bottom. We must again turn to the contract. The provisions pertinent to this inquiry are as follows:

"The contractor shall keep the trenches free from water during the progress of the work, as no pipe or masonry shall be laid in water. * * *

"All the pipes must be kept thoroughly clean and dry, and no water will be allowed to flow through them during the construction of the sewers. * * *

"All excavations shall be by open cut from the sur-

face, and all trenches shall be excavated to grade and thrown out upon the bank or surface of the street for a distance of not less than 30 feet in advance of the pipe laying, and no part of this excavating nor any of the back-filling shall be done by the pipe layer. * * *

"In no case, without special permission by the board, shall the excavation of trenches be more than 350 feet in advance of the completed sewer. * * *

"Said wages [of inspectors] will be paid by the city for all inspection that is required at the rate of 150 feet of completed sewer for each and every ten hours' work done thereon. * * *

"No compensation for trenching done in excess of the board's order will be allowed. * * *

"No charge shall be made by the contractor for hindrances or delays from any cause during the progress of the work embraced in the contract."

It will be noted that this contract nowhere contemplated that the pipe laying should "immediately" follow the machine. The trenching was to be done "not less than 30 feet in advance of the pipe laying." Taking all these provisions of the contract, can it be said that it was contemplated that the pipe layer should not be more than six or eight feet behind the machine at all times? The answer is found in the contract. Nor would the delay of 20 or 30 minutes in laying the pipe be such a delay as would render the city liable for a breach of the terms of the contract or justify a judgment against it. It is unfortunate that in a portion of this work (less than one-quarter) the plaintiff encountered moist conditions in the soil, but the defendant had not guaranteed the conditions that might be found in the earth. The parties to this contract had dealt at arm's length. They had put their engagements in writing. By that writing they are bound. There has been no appropriation of plaintiff's property under a void contract justifying recovery upon grounds equitable in their nature; no conduct on the part of the city which estops it from insisting

upon its legal rights under the contract. In fact, the declaration is not upon the common counts, nor is a recovery sought on the *quantum meruit;* the declaration counts on the contract and the contract alone.

No recovery thereunder being justified on the facts proven, the judgment is affirmed, with costs.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.