HULL  *v.*  BOARD  OF  COUNTY  ROAD  COMMISSIONERS
OF LAPEER COUNTY.

1. HIGHWAYS AND STREETS—RIGHT OF CONTRACTOR TO ESTIMATE—
   SUBSTANTIAL COMPLIANCE—STATUTES.

   A road contractor is not entitled to an estimate for gravel
   furnished in the construction of a road, under the pro-
   visions of Act No. 125, Pub. Acts 1917, under the theory
   that there was a substantial compliance with the contract,
   where said gravel is not of the quality required by the
   contract.[1]

2. SAME—ACTION BY CONTRACTOR PREMATURELY BROUGHT WHERE
   ESTIMATE REFUSED FOR NONCOMPLIANCE WITH CONTRACT.

   In an action by a road contractor against a board of
   county road commissioners upon a contract for the con-
   struction of a public highway, where it appears that the
   contractor was refused an estimate by the board's en-
   gineer because the gravel furnished was not of the quality
   provided for in the contract, the action was prematurely
   brought, and defendant's motion for a directed verdict
   should have been granted.[2]

Error to Lapeer; Williams (William B.), J.   Sub-
mitted January 21, 1925.   (Docket No. 36.)   De-
cided April 24, 1925.

Assumpsit by Murray E. Hull against the board
of county road commissioners of Lapeer county upon
a contract for the construction of a highway.   Judg-
ment for defendant.   Plaintiff brings error.   Af-
firmed.

*Earl I. Heenan* and *Herbert W. Smith,* for appel-
lant.

*Theo. D Halpin* and *Elmer Shumar,* for appellee.

MOORE, J.   On the 28th day of March, 1918, the
plaintiff entered into a written contract with the de-

[1]Highways, 29 C. J. § 349; [2]Id., 29 C. J. § 354.

fendant to build a State trunk line highway in Lapeer county. Trouble arose between the engineer in charge and this litigation followed. Plaintiff entered upon the construction of this road and was given 19 estimates for work and material furnished. The last estimate was given for construction work from December 31, 1920, to January 15, 1921. Plaintiff continued to furnish labor and material up to the 5th day of February, at which time he asked for an estimate for labor and material furnished since January 15th. Plaintiff had furnished 2,500 yards of gravel in addition to having performed considerable work since January 15th. Plaintiff requested defendant's engineer to furnish this estimate. He declined because of oversized stone in the gravel. At the close of the testimony the defendant asked for a directed verdict. The learned trial judge was in doubt as to what he ought to do, but decided to give the plaintiff the benefit of the doubt. The case was submitted to a jury who returned a verdict in favor of the defendant. The case is brought into this court by writ of error.

Counsel are agreed that the only serious question in the case is whether plaintiff was entitled, on the 5th day of February, 1921, to an estimate for the work and gravel placed upon this road between January 15th and the 5th day of February. In attempting to solve this question counsel for appellant present the following reasons:

(1) That the court erred in the admission of evidence.

(2) That the court erred in refusing to give plaintiff's requests to charge.

(3) That the court erred in the charge as given.

(4) That the court erred in denying the motion for a new trial.

and argue each proposition.

There is very little dispute as to the facts in the case.

The contract had the following provisions:

"The gravel for this course shall consist of good, clean bank gravel, not less than sixty per cent. by weight, a larger per cent. if possible, of which shall be pebbles that will be retained on a screen of one-eighth-inch mesh, and pass through a screen of two and one-half-inch mesh.   *   *   *

"Payments—Payment shall be made on this contract for completed work and materials furnished in place as the work progresses, said payments to be made every two weeks after the money derived from the sale of bonds is actually in the hands of the county treasurer upon estimates of the engineer or officer in charge.   *   *   *

"Plans—The work shall be performed in a manner to conform to these specifications and plans,   *   *   * which plans and the specifications shall form a part of this contract.

"Miscellaneous Provisions—   *   *   *   If any questions arise as to the interpretation of the specifications, contract or plans, or any part thereof, the officers in charge of the work, or their representative, shall determine as to the true meaning, and this decision shall be final."

When the last estimate was requested it is conceded by plaintiff that many of the pebbles in the 2,500 yards of gravel would not pass through a two and one-half-inch mesh.   Just what was said by the engineer, when a request was made for an estimate, is stated in his testimony as follows:

"Mr. Hull called me up on the night of the 31st of January, 1921, and informed me that he had the gravel all on the bottom course on road 30.   I told him I was over the road that day and he asked me when he could get an estimate, and I asked him what he was going to do about the oversized stone and he said he would have to remove them, that he was going to be over to Lapeer the next day and asked me to get the estimate out for him and I told him I would get the estimate to Lapeer immediately upon his removing the oversize stone and he said if that is the way I felt about it he would leave them right there and I told him all right to suit himself."

Mr. Hull substantially agrees with this statement.

Counsel argue there was a substantial compliance with the contract and the estimate should have been given; citing section 63, Act No. 125, Pub. Acts 1917 (Comp. Laws Supp. 1922, § 4733), which reads:

"As the work of improvement progresses, the county road commissioners, or State highway commissioner, shall cause written estimates to be made, and certificates of work done and materials furnished, according to specifications, and of the value of the work accomplished by the several contractors. These estimates and certificates shall be made and signed by a competent engineer. At the request of any contractor doing work, such estimates shall be made at least once in each month." * * *

It is urged that because of the cold weather the oversize stone could not be taken out until spring, and that it is unfair to hold up the estimate until then. It is an answer to this argument to say that the contractor should have done his work when the weather was such as to enable him to do it as he had agreed to do it, or to defer asking for his estimate until he was entitled to it under his contract. The purpose of having a contract in these cases is to remove misunderstandings and to insure the building of a good highway.

We are of the opinion that a further discussion of the questions raised would be unprofitable because we think upon plaintiff's own showing that his suit is prematurely brought, as he had no estimate. The trial judge should have directed a verdict for defendant as requested. *Fisher* v. *Burroughs Adding Machine Co.*, 166 Mich. 396; *Schneider* v. *City of Ann Arbor*, 195 Mich. 599; 6 R. C. L. p. 958.

The judgment is affirmed, with costs to the appellee.

BIRD, SHARPE, STEERE, FELLOWS, and WIEST, JJ., concurred. McDONALD, C. J., and CLARK, J., concurred in the result.