Argued at Pendleton October 28, 1925, reversed and remanded January 19, 1926.

## INLAND CONSTRUCTION COMPANY *v.* CITY OF PENDLETON.

(242 Pac. 842.)

**Appeal and Error—No Dismissal for Omissions from Transcript Which Could Operate Only Against Appellant's Interests.**

1. Appeal from judgment of nonsuit will not be dismissed because copies, instead of originals, of blue-prints, were filed to supply omissions from transcript, as such defects could operate only against appellant's interests.

**Work and Labor—Where Work is Completed According to Contract Terms Except as to Time, Contractor may Declare in Assumpsit and Recover Contract Price on Quantum Meruit.**

2.    Where work under construction contract is completed according to its terms, except as to time, and nothing remains to be done except payment, contractor may declare specially on contract or generally in *indebitatus assumpsit,* and recover contract price, less liquidated damages for delay, on *quantum meruit,* but, if work performed was not within parties' contemplation as expressed in contract, reasonable value thereof may be recovered.

**Contracts—Performance Within Contract Time not Condition Precedent to Payment, Where Damages for Delay are Stipulated.**

3.    Performance of work within contract time is not a condition precedent to payment, where liquidated damages for delay are stipulated.

**Contracts—Rescission or Abandonment not Authorized by Every Slight Breach or Changes Contemplated by Agreement.**

4.    Rescission or abandonment of contract cannot be predicated on every slight breach, nor on deviations or changes contemplated by agreement.

**Municipal Corporations—Elimination of Filter Beds Held not Departure from Contract for Sewage Disposal Plant.**

5.    Elimination by city of two of four filter beds provided for by contract for sewage disposal plant *held* not a departure from contract, where city, in instructions to bidders and in contract, reserved right to eliminate filter beds and make changes in work, and parties entered into separate agreement modifying contract as to filter beds.

**Municipal Corporations—Removal of More Rock Than Estimated Held Within Contemplation of Parties to Contract.**

6.    Removal of rock, encountered in construction of sewage disposal plant, in excess of quantity estimated by city for "comparison of bids," *held* within contemplation of parties to contract, in view of instructions to bidders and contractor's proposal; contractor assuming such risk as a hazard of his business, and estimates being neither representations nor warranties.

**Municipal Corporations—City, Claiming Liquidated Damages for Delay in Completion of Work, must be Free of Fault.**

7.    City, to enforce clause of contract providing for liquidated damages for delay in completion of work, must be free of any act or omission tending unreasonably to delay or hinder contractor.

---

2.    Right of contractor to sue on *quantum meruit* upon breach of construction contract by other party thereto, see note in 13 **L. R. A.** (N. S.) 448.   See, also, 28 **R. C. L.** 704.

7.    See 6 **R. C. L.** 986.

**Municipal Corporations—City Required to Exercise Diligence to Obtain Easement to Render Builder of Sewage Disposal Plant Liable for Liquidated Damages for Delay.**

8. To render builder of sewage disposal plant liable under contract for liquidated damages for delay in completion, the city was obliged to exercise due diligence to obtain easement, as required by contract, over land on which outfall sewer was to be located, and, whether it did so, was for trier of facts to determine.

**Municipal Corporations—Unforeseen Difficulties in Work, No Excuse for Contractor's Delay.**

9. Contractor for city sewage disposal plant cannot avoid liability for liquidated damages for failure to complete work in time, because of unforeseen difficulties in excavating rock or laying concrete, unless work was retarded by unreasonable interference and supervision by city engineer.

**Municipal Corporations—City not Entitled to Liquidated Damages for Delay Caused by It.**

10. If contractor for city work could have completed it within stipulated time, had it not been for unreasonable delay caused by act or omission of city, latter is not entitled to liquidated damages for failure to complete it in time, though extension of time was granted.

**Municipal Corporations—Whether Contractor Could have Completed Work in Time, Except for Delay Caused by City, Held Fact Question.**

11. Whether contractor for city sewage disposal plant could have completed it within stipulated time, had it not been for unreasonable delay, caused by city's act or omission, and hence was not liable for liquidated damages, *held* fact question.

Appeal and Error, 4 C. J., p. 605, n. 69.
Building and Construction Contracts, 9 C. J., p. 783, n. 27, p. 786, n. 63, p. 817, n. 78, p. 823, n. 23, p. 849, n. 83, p. 850, n. 98, p. 863, n. 73, 74.

From Umatilla: J. U. CAMPBELL, Judge.

In Banc.

ON MOTION TO DISMISS.

1. Respondent moves to dismiss the appeal herein for the reason that the transcript is incomplete in particulars substantially affecting the merits of the judgment from which this appeal is taken. On September 15, 1925, this court directed the dismissal of the appeal unless appellant should, within twenty

days, supply the omissions in the transcript. It is now urged there has been a failure to comply with such order. All of the missing exhibits have been supplied except two blue-prints, and copies of these have been filed. Such blue-prints do not substantially affect a review of the judgment of nonsuit. The question for decision is whether plaintiff established a *prima facie* case. These defects in the transcript could operate only against the interests of appellant, and respondent has no cause to complain. The motion to dismiss the appeal is denied.

## ON THE MERITS.

On June 16, 1922, plaintiff entered into a written contract with the defendant city to construct for it, on a unit basis, a sewage disposal plant in accordance with certain plans and specifications. The work was to be completed on or before October 16, 1922, and, in the event of the contractor's failure so to do, the city was authorized to deduct from the amount due under the contract $25 for each day thereafter as liquidated damages. Plaintiff completed its contract in March, 1923, and it is alleged was paid $66,392.03, the contract price, less $1,212.99 which the city retained as liquidated damages. Plaintiff alleges that it was prevented from performing its contract within the time stipulated on account of the delay and hindrance of defendant in the following particulars:

(1) *Change of plans as to filter beds.* The contract provided for four filter beds, and two were eliminated. The character of the soil in these beds was found unsuitable by the city engineer for a proper filtering system, and plaintiff was obliged to remove gravel from the same and to haul and screen other gravel from the Umatilla River for such purpose.

A radical departure was made in regard to the location of the filtering beds, thereby causing additional expense and delay in their construction.

(2) *Breach of warranty as to quantity of rock to be excavated for septic tank.* The plans and specifications provided the bed of such tank should be supported on a solid rock foundation and no concrete poured until excavation was completed and water drained from the bed. The test borings as disclosed in the plans and specifications showed a sand and gravel material, whereas the contractor was obliged to excavate practically solid rock. The estimate of the city was 380 cubic yards of rock, but the amount actually removed was 776 cubic yards. Plaintiff claims that on account of the increased amount of rock to be excavated, it became necessary to pump a large amount of water from the bed of the tank, which would not have been necessary had defendant's statement as to kind and character of soil been correct.

(3) *Failure to secure easement over land upon which outfall sewer was to be located.* Plaintiff says defendant neglected and refused to obtain this easement for "practically the entire summer period of 1922," and, on account thereof, it was unable expeditiously to perform this part of the contract, although ready, able, and willing to do so.

(4) *Arbitrary supervision of work by city engineer.* In this regard plaintiff complains that it was unreasonably required to lay concrete in septic tank and sludge beds in "small layers at a time instead of allowing higher formations to be made and the concrete poured therein." It is also asserted that plaintiff was required to do the work in an exploratory manner

and could not proceed with each unit as contemplated by the contract.

It is alleged that on account of the default of defendant, as above briefly stated, the plaintiff could not perform the contract in the time and manner therein specified and was obliged to carry on the work during the winter season under adverse conditions, which caused much additional expense and delay. Plaintiff avers there was a ''complete change and departure from the terms of the original contract,'' and therefore seeks recovery on the theory of *quantum meruit.* It is alleged that the actual cost of the work was $76,-500, but the proof shows that such sum includes an estimated profit of 10 per cent. Judgment against the city is demanded in the sum of $10,000. At the conclusion of plaintiff's case in chief, defendant moved for judgment of nonsuit on the following grounds: (1) That the complaint fails to state facts sufficient to constitute a cause of action; (2) there is no evidence to support a verdict against defendant; (3) that the written contract executed by the parties hereto determines the full measure of their rights; that every delay alleged as a basis of this action is contemplated by the contract as modified, and an exclusive remedy for such alleged default is therein provided; and (4) that the amount retained by the city for engineering services incurred by reason of plaintiff's failure to complete the contract within the time extended by the city is less than the amount of liquidated damages to which it is entitled under the terms of the contract. From an order dismissing the amended complaint and entering judgment of nonsuit, plaintiff appeals. REVERSED AND REMANDED.

116 Or.—43

For appellant there was a brief by *Mr. Thomas Mannix* and *Messrs. Raley, Raley & Steiwer,* with an oral argument by *Mr. Frederick Steiwer.*

For respondent there was a brief and oral arguments by *Mr. J. A. Fee, Jr.,* and *Mr. C. Z. Randall.*

BELT, J.—2–4. This cause, which was tried before the court without a jury, may well be considered thus: (1) Did plaintiff select a proper legal theory upon which to recover, and (2) if so, is there any evidence tending to establish such theory? It is conceded that plaintiff constructed the sewage disposal plant in compliance with the terms of its contract, with the exception of not completing it within the stipulated time. Under such circumstances, where nothing remains to be done except payment for the work performed, plaintiff, at his election, may declare specially on the original contract or generally in *indebitatus assumpsit.* It will not do for the defendant to allow plaintiff to proceed after expiration of time for performance and accept the fruits of its industry and then say, "It is true you have completed the work, but not within the time agreed. Therefore, I will not pay." In the light of the record herein, performance within the contract time is not a condition precedent to payment. Defendant has its remedy to counter in liquidated damages. If plaintiff elects to recover on *quantum meruit,* as has been done in this case, the special contract governs and determines the amount of recovery, so long as the parties proceeded under it. In other words, the contract price becomes the *quantum meruit* of the case. As stated in *Burgess v. Helm,* 24 Nev. 242, 249 (51 Pac. 1025, 1026), cited in *West v. Eley,* 39 Or. 461 (65 Pac. 798):

"Under a complaint on a *quantum meruit* for services, where a specified contract is proved, fixing the price for services, the stipulated price becomes the *quantum meruit* in the case: *Fells* v. *Vestvali,* 41 N. Y. (2 Keyes) 152. If the plaintiff was entitled to recover at all, it was on the ground that the services had actually been rendered; and after complete performance of an express contract, there is no reason why a recovery may not be had upon a complaint on *quantum meruit* (Id.), when the opposite party to the action has not been misled in the defense."

Also, in support hereof see: *Sargent* v. *Foland,* 104 Or. 296 (207 Pac. 349); *Toy* v. *Gong,* 87 Or. 454 (170 Pac. 936); *Raile* v. *Peerless American Products Co.,* 192 App. Div. 506 (182 N. Y. Supp. 721); *Jenney Electric Co.* v. *Branham,* 145 Ind. 314 (41 N. E. 448, 33 L. R. A. 395); *Randolph* v. *King et al.,* 74 Ind. App. 68 (127 N. E. 20); *Manning* v. *Dallas,* 73 Cal. 420 (15 Pac. 34). The most that can be contended against such rule is that there is a variance between the allegations and the proof. But in what way is defendant injured or prejudiced? It matters not whether plaintiff proceeds on the express contract or on *quantum meruit* if the amount of recovery is the same.

If, however, the work performed was not within the contemplation of the parties as expressed in their contract, and there was a "complete change and departure from the terms of the original contract," recovery may be had for the reasonable value of such work, regardless of the contract price: *Hayden* v. *Astoria,* 74 Or. 525 (145 Pac. 1072). The contract governs so far as it can be traced to the work performed, but when the parties no longer proceed under its terms, the law implies an obligation to pay the reasonable value of the services rendered. But it is

to be remembered that rescission or abandonment of the contract cannot be predicated on every slight breach thereof nor on deviations or changes that the agreement of the parties contemplates: *Gray* v. *Jones*, 47 Or. 40 (81 Pac. 813); Elliott on Contracts, § 3676. It is fundamental that so long as the contract exists, it determines the measure of compensation. After careful consideration we have reached the conclusion that the amended complaint is sufficient and not subject to demurrer. If the facts therein alleged are true, plaintiff would be entitled to recover. If the evidence showed that the work performed was not within the contemplation of the parties as expressed in their written agreement, the amount of recovery would be the reasonable value thereof; but if the contract can be traced to the work performed, the plaintiff's compensation is determined thereby, and the only remaining issue, aside from separate defenses hereinafter mentioned, would be whether the city was justified in deducting from the contract price the sum retained by it as liquidated damages.

Let us now consider the facts. First, was the work performed covered by the contract? Secondly, was the failure of the plaintiff to perform its contract within the time specified due to any act or omission on the part of defendant not within the contemplation of the parties? These questions will be considered in the order stated.

5. There is no merit in the contention that the elimination of two filter beds constituted a departure from the original contract. "Instructions to Bidders" provided:

"The city of Pendleton reserves the right to defer or eliminate entirely from the contract the construc-

tion of the filter beds * * until further experiments
have been made to determine from the nature of filter-
ing material in place as well as the character of the
settled effluent from the septic tank the advisability or
necessity of constructing such filter bed.''

The contract relative to change of plans stipulated:

''It is understood and agreed that the city shall
have the right to make such changes in the amount,
dimensions, or character of the work to be done as
may be deemed necessary, or as, in the opinion of the
engineer, the interest of the work may require. If
any such changes or alterations should diminish the
quantity of the work to be done, they shall not con-
stitute a claim for damages for anticipated profits on
the work that may be so dispensed with. If they in-
crease the amount of the work to be done, such in-
crease shall be paid for according to the quantity
actually done and at the price established for similar
work under this contract.''

Furthermore, the parties entered into a separate
written agreement modifying the original contract
concerning filter beds and fixed the price for such
work, and the plaintiff was paid accordingly. Han-
ley, the superintendent for the construction company,
called as a witness in behalf of plaintiff, in response
to the question, ''You are not making any complaint
as to the contract (referring to the supplemental
agreement)?'' answered, ''Except as to the time.
We couldn't get done by the 16th of October, because
we didn't get the start; this was the agreement be-
tween us.'' Such delay, if the same were caused by
this change of the plans, did not indicate an intention
to abandon the contract. The original agreement
was modified with the express consent of plaintiff.

6. The gravamen of plaintiff's complaint concern-
ing this phase of the case centers about the alleged

breach of warranty by the city concerning the amount of rock to be excavated. In the "Instructions to Bidders" we find:

"1. Local conditions: Bidders are notified that they must thoroughly examine the plans, the annexed form of proposal, form of contract and specifications, and thoroughly familiarize themselves with all the laws and ordinances pertaining to this improvement. They must also examine and judge for themselves as to the location and character of the proposed work, the amount and quality of material required and work to be done. *Ground water conditions and the depth to rock must especially be investigated.* If there be any doubt or obscurity as to the meaning of any part of the above, it shall be brought to the attention of the engineers in order that the necessary explanation or correction may be made before submitting a bid."

Bidders were also advised:

"The estimate of quantities of work to be done and the materials to be furnished under the specifications, as attached hereto, *is approximate and is given only as a basis of calculation upon which the award of contract shall be made.* The city reserves the right to increase or diminish the amount of any class of work as may be deemed necessary."

In the proposal to do the work the contractor stated:

" 'The undersigned bidder declares that he has carefully examined the plans, notice to contractors, instructions to bidders and annexed form of proposal, form of contract and specifications for the Pendleton sewage disposal plant, and that he has made an examination of the site of the proposed work, and has made such investigations as are necessary to determine the character of the material and conditions to be encountered."

The city made certain test borings which were made known to plaintiff. There is no contention that the

city misrepresented to the contractor the nature or character of the ground conditions as disclosed by these borings. The tests made were for the plaintiff's inspection. It had as much opportunity as the city to ascertain the amount of rock required to be excavated. The estimates were made for ''comparison of bids'' and cannot be considered either as representations or warranties. The contractor assumed the risk: *Palmberg* v. *City of Astoria,* 112 Or. 353 (228 Pac. 107, 229 Pac. 380). The mere fact that more rock was encountered than anticipated is a hazard of the business in which plaintiff is engaged. In *Leary* v. *Watervliet,* 222 N. Y. 337 (118 N. E. 849), we find the following significant language, which we think is particularly applicable to the case at bar:

''On the evidence before us the bid for work was based upon approximate estimates only, and was given and accepted as such. The payments therefor were to be made according to the amount of work performed whether the same was greater or less than the quantities specified in the approximation. The instructions to bidders, the plans and specifications, and the bid, show that the contractors were required to take all responsibility for the work and the amount of the several kinds thereof, the difficulties to be met with in doing the same, the exigencies of the weather and floods, and changes that the commission might make therein, causing an increase or decrease in the work to be done. No fraud or concealment by the commission is alleged. A variation in the estimate by the commission of the work to be done, arising by mistake or inadvertence or by changes of work contemplated, was at the risk of the contractors. * * The plaintiffs had, so far as appears, the same opportunity to make test holes and determine where rock would be found when the excavations were made as members of the commission representing the city.''

The city paid for all rock excavated according to the terms of the contract. In fact, the contractor was compensated on the basis of 776 cubic yards, whereas it excavated only 666 cubic yards. The city, although not obliged to do so under the contract, allowed 100 cubic yards as overbreak. The facts in the instant case do not come within the rule of law announced by this court in *Hayden* v. *Astoria, supra,* upon which appellant strongly relies. There, the type of dam to be constructed was radically changed. The engineer unreasonably interfered in the supervision of the work. There was such a marked difference between the estimates and the amount of work actually performed that the court well said it did not come within the contemplation of the parties. Neither is *Hollerbach* v. *United States,* 233 U. S. 165 (58 L. Ed. 898, 34 Sup. Ct. Rep. 553, see, also, Rose's U. S. Notes); *Christie* v. *United States,* 237 U. S. 234 (59 L. Ed. 933, 35 Sup. Ct. Rep. 565); *United States* v. *Spearin,* 248 U. S. 132 (63 L. Ed. 166, 39 Sup. Ct. Rep. 59), and cases of similar import, applicable here for the reasons stated in *Palmberg* v. *Astoria, supra,* where such authorities are well collated. We agree with the conclusion reached by the learned trial judge that the work performed was within the contemplation of the parties and for that reason the contract price is the measure of plaintiff's compensation.

7. It remains to be determined whether there is any evidence tending to prove that plaintiff was prevented from performing its contract on account of the alleged default of the city. If plaintiff has been paid the full amount of the contract price, less the sum retained as liquidated damages, and defendant is not guilty of any act or omission which unreasonably con-

tributed to or caused plaintiff's failure in the strict performance of its contract, there could be no recovery on the part of plaintiff under any theory of the case in an action on *quantum meruit*. We are not concerned with the question of damages. If, however, the contract was not performed as above stated, and such failure was due to unreasonable delay and interference on the part of the city, it would have no right to deduct from the contract price any sum as liquidated damages, and the verdict should be for plaintiff in the amount so retained. Otherwise stated, the city, in order to enforce the clause relative to liquidated damages, must be free of any act or omission which tended unreasonably to delay or hinder plaintiff in the performance of the contract. Where delays were caused by mutual default of the parties, contract penalties will be regarded as waived, and the court will not attempt to apportion the delays between the contractor and the city: *Vilter Mfg. Co.* v. *Tygart's Valley Brewing Co.*, 168 Fed. 1002; *Jefferson Hotel Co.* v. *Brumbaugh*, 168 Fed. 867 (94 C. C. A. 279). For such delay or interference as was contemplated by the parties, the plaintiff has no cause to complain, and would not on account thereof be excused from performance within the time specified.

8. Appellant claims it was delayed in the work on account of the failure of the city to obtain an easement upon which the outfall sewer was to be located. Relative to this phase of the case, the contract provides, "The outfall sewer will be partly located on privately owned land over which an easement will be secured by the city and partly on the city street." There is evidence that plaintiff commenced work on the outfall sewer, and two or three weeks thereafter was stopped by the owner of the land because the city had not obtained title thereto. Hanley, the superin-

tendent, says that work commenced again when the city gave notice that the easement had been acquired. Under the contract the city had a reasonable length of time in which to obtain title, but we think it was obliged to exercise due diligence in the matter; and whether it did so is a question for the trier of facts to determine.

Work was started on the filter beds, but the gravel and soil were found not suitable for a proper filtering system, and, under order of the city engineer, the contractor stopped and negotiations were had relative to change of plans. The work was finally completed pursuant to a written contract modifying the original agreement. Appellant claims, however, that such change was a contributing factor in setting the work over into the winter season. There is evidence to support such contention.

9–11. The contractor has no cause to complain of delay caused by unforeseen difficulties in the excavation of rock and in the laying of concrete, unless the progress of the work was retarded as a result of unreasonable interference and supervision on the part of the city engineer. The city extended the time of performance of the contract forty-five days, but we think that is immaterial so far as the right of the city to enforce the clause of the contract relative to liquidated damages is concerned. The question is: Could the contractor have completed the work within the stipulated time had it not been for unreasonable delay caused by the act or omission of the city? If it could have so performed its contract, the city would not be entitled to deduct liquidated damages, notwithstanding the fact that an extension of time was granted. This issue presents a question of fact. The court cannot say as a matter of law that the contractor was not delayed in the manner above mentioned.

In view of the fact that the cause must be remanded, we think it proper for the guidance of the lower court to state that in our opinion the defense of estoppel has no application to the issues. Other alleged defenses and the counterclaim may be submitted under appropriate instructions.

The judgment of the lower court is reversed and the cause remanded for new trial not inconsistent with this opinion.    REVERSED AND REMANDED.