## WOOLNER v. LAYNE.

1. REFORMATION OF INSTRUMENTS—EVIDENCE.
    Evidence supporting reformation of a contract must be clear and convincing.

2. SAME—SCRIVENER'S ERROR.
    Inclusion of insurance and tax reimbursement clauses as part of lease where such clauses were never intended or discussed by the parties, but were included by a secretary of a real estate broker, was a scrivener's error and a clear case for reformation.

3. SAME—AGREEMENT—WRITING—INTENT.
    A party to a contract who agrees to its terms is entitled to assume the written instrument is correct, where the other party prepares the writing which embodies the agreement, and is not barred from reformation by signing or accepting the writing without reading it.

4. SAME—ADDED CLAUSES—INTENTION.
    Denial of reformation, asked by defendants, of a printed lease form contract where insurance and tax clauses were included as part of the written lease when the parties never discussed or intended that they be and where plaintiffs received the contract signed by defendants *held*, improper, where plaintiffs at the time of execution of the written instrument not only knew that the writing did not accurately express the intention of defendants as to the terms, but also knew what the intention was.

REFERENCES FOR POINTS IN HEADNOTES
[1] 45 Am Jur, Reformation of Instruments § 112.
[2] 45 Am Jur, Reformation of Instruments § 54.
[3, 5] 45 Am Jur, Reformation of Instruments §§ 79, 80.
[4] 45 Am Jur, Reformation of Instruments § 7.
[6] 53 Am Jur, Trial § 1133.

5. Same—Written Agreement—Conformity with Verbal Agreement.

> Failure of lessee to read contract does not bar his action for reformation where he relied upon a real estate agency to draw the contract in conformity with the verbal lease agreement.

6. Appeal and Error—Nonjury Cases—Findings of Fact.

> A trial court trying a case without a jury is required to make findings of fact in order that an appellate court may properly review trial court proceedings (GCR 1963, 517.1).

Appeal from Ingham; Coash (Louis E.), J. Submitted Division 2 October 4, 1967, at Lansing. (Docket No. 3,135.) Decided March 26, 1968. Rehearing denied May 23, 1968. Leave to appeal granted July 31, 1968. See 381 Mich 769.

Complaint by Sidney and Doris Woolner against Chester and Evelyn Layne, to recover amounts due under a lease. Defendants sought reformation of the lease. Judgment for plaintiffs. Defendants appeal. Affirmed in part and reversed in part.

*Farhat, Burns, Treleaven & Luoma,* for plaintiffs.

*Rapaport, Siegrist & Sablich,* for defendants.

McGregor, P. J. This appeal is from a circuit court judgment which denied reformation of a printed lease form contract. The lease in question was for a private house and the amount alleged as due under the contract is relatively small when compared to the disputed amounts we are more accustomed to seeing in the appellate courts. The relative smallness of the damages sought, however, in no way diminishes the importance of the legal issues raised or the defendants' right to appeal.

Some time in June, 1964, appellants became interested in a house in the Lansing area which was

for sale and listed with a real estate firm. The house was owned by the plaintiffs, who had recently moved to the Washington, D.C., area in connection with government employment. Because the defendants' work had in the past required moving often and future moves were uncertain, negotiations between the parties concentrated on an arrangement whereby the house could be leased with an option to purchase. Defendants negotiated with the real estate broker listing the house, Mr. Matthews, and on one occasion with the plaintiff husband himself by a long distance telephone call when he was in Ann Arbor on government business. When the parties themselves negotiated, a monthly lease payment of $160 was mentioned. No firm agreement was reached by the parties at that time. A short while later, the defendants and the real estate agent reached an agreement on a one-year lease with payments of $160 per month, $50 of which was to apply towards a down payment under an option to purchase. Mr. Matthews then instructed a secretary with the real estate concern to prepare a lease. The secretary did so by filling in blanks on a printed form, which included clauses stating the lessee would reimburse the lessor for all insurance and taxes during the term of the lease. These clauses were set out in such a manner that if the defendants had read the lease, they would have realized that the printed lease contained provisions which had not been bargained for or discussed. The defendants, however, did not read the lease because, as the defendant husband testified, "I figured the realty company would take care of the thing." After the defendants signed the lease, it was sent to the plaintiffs who also signed the lease and mailed it back.

Nothing more was discussed between the parties until about 8 months later when the plaintiff wife made an inspection visit to the house which she

and her husband were leasing to the defendants. By this time, defendants had made it known that they would not exercise their option to purchase. At this meeting, the subjects of taxes and insurance were brought up, and the defendants for the first time realized that the lease contained such clauses. A dispute arose over who was responsible for the taxes and insurance on the house, the dispute continuing through this appeal.

Defendants continued to pay the $160 per month and tendered check for $160 for the last month's payment under the lease for full settlement of the lease. Plaintiffs refused the check and demanded reimbursement for taxes in the amount of $574.72 and insurance in the amount of $111.11. Suit was brought for payment of all three items, totaling $845.83. Defendants answered by tendering the $160 for the last monthly payment and argued that the printed contract should be reformed to comply with the agreement. Reformation was denied and a judgment for the full amount was entered against the defendants.

This appeal illustrates the classic contractual struggle between the "actual intent" school of thought which maintains the meeting of the minds of the parties should control contractual interpretation, and the "objective" school of thought which maintains a strict reading of a contract is necessary for the security of business transactions. See the concurring opinion of Judge Frank in *Ricketts* v. *Pennsylvania R. Co.* (CA 2, 1946), 153 F2d 757 (164 ALR 387). Both schools of thought have valid arguments and either can be argued without embarrassment. Generally, the objective theory of contracts has prevailed as it allows men to place reliance on inanimate writings which are not subject to the same frailties of memory as are humans. There has grown up at the same time a body of law which

views contracts more fundamentally as "agreements," see Black's Law Dictionary (4th ed), p 394, which allows reformation of written instruments to conform to the intent of the parties. *General Discount Corporation* v. *Sadowski* (CA 6, 1950), 183 F2d 542.[1] This body of law is understandably, and rightly, quite circumspect.

Without question the evidence supporting reformation of a contract must be clear and convincing. *Harris* v. *Axline* (1949), 323 Mich 585; *Miles* v. *Shreve* (1914), 179 Mich 671. We note that the record indicates that the parties mentioned only a lease payment of $160 per month and that the lease was finalized only after negotiations with Mr. Matthews, the real estate broker, who handled the lease. Mr. Matthews testified that the inclusion of the insurance and tax reimbursement clauses was never discussed. The mistake was made when the real estate broker's secretary chose a printed form which contained clauses which had not been bargained for or discussed. Indeed, this was a scrivener's error and "the clearest case for reformation is one involving a scrivener's error." See Wade, Restitution (2d ed), at p 476 (1966).

In the instant case there is the further complication that the defendants did not read the lease instrument prepared at the direction of Mr. Matthews. While their failure to read the contract is of major significance, the failure to read the contract is not determinative of this case:

"Where the parties to a contract have reached an agreement on its terms and one of them has undertaken to reduce the contract to writing or to prepare a writing which embodies the agreement, the

---

[1] This case proceeded under the Michigan precedent on equitable theory and effectively overturned the holding in *Sadowski* v. *General Discount Corp.* (1940), 295 Mich 340, which had proceeded under legal theories.

other party is ordinarily entitled to assume that the written instrument is correct, and is not barred from reformation by signing or accepting it without reading it. (Citing *Elliott* v. *Saskett* (1883), 108 US 132 [2 S Ct 375, 27 L Ed 678])." Annotation, Negligence in executing contract as affecting right to have it reformed. 81 ALR2d 7, 38, 39 (1962); see, also, *Fineis* v. *Proctor* (1929), 248 Mich 550.

It should be remembered in this case that the parties had discussions about the contract prior to the time Mr. Matthews undertook to have the contract set out in writing. No mention was made by the parties of taxes or insurance. When the contract was mailed to the plaintiff in Washington, after it had been signed by the defendants, they could well see that the lease contained provisions that had not been contemplated by the parties.

"If one party at the time of the execution of a written instrument knows not only that the writing does not accurately express the intention of the other party as to the terms to be embodied therein, but knows what that intention is, the latter can have the writing reformed so that it will express that intention." 2 Restatement, Contracts, § 505, p 973 (1932).

Heavy reliance in the lower court was placed on the decision in this Court in *Blue Water Excavating Company, Inc.,* v. *State Highway Commissioner* (1966), 4 Mich App 266. That decision was erroneously relied upon far too broadly in the lower court. The last paragraph in the *Blue Water Excavating Case,* on page 277, shows the narrowness of that opinion:

"The effect of this decision is a reaffirmation of the rationale and its manifestation in holdings involving public contracts which, in keeping with considerations of public policy, denies relief to success-

ful low bidders on unambiguous, written, competitive bidding contracts after performance has begun, where the mistake for which relief is sought is attributable solely to the plaintiff contractor."

It is widely recognized that the legal rules surrounding reformation of competitively bid public contracts are different from the rules surrounding reformation of private contracts. Compare Annotation, Negligence in executing contract as affecting right to have it reformed, 81 ALR2d 7, *supra,* with Annotation, Rights and remedies of bidder for public contract who has not entered into a contract, where bid was based on his own mistake of fact or that of his employees, 52 ALR2d 792 (1957). With competitively bid public contracts, there is a distinct public policy of having binding bids submitted without knowledge of the bids to be submitted by competitors. Normally, no negotiations precede the submission of bids on public contracts and the written bids represent the entire negotiations. The public and the courts must guard against tempting unscrupulous contractors to engage in a practice of submitting low bids to gain public contracts, then claiming mistake in order to fatten profits. Such tempting abuse of reformation procedures in the area of public contracts could make a mockery of the system of sealed bids for government contracts. In the instant case, we have no overriding public policy taking precedent over the established rules of reformation.

The record in this case clearly indicates that the inclusion of the tax and insurance clauses was a scrivener's error and, therefore, presented a strong case for reformation. Failure of the defendants to read the contract does not bar their action for reformation in this case, as they had every right to assume that the real estate agency had drawn the contract in conformity with the verbal agreement.

This Court is dismayed because the record is completely devoid of a finding of facts by the trial court, as is required by GCR 1963, 517.1. When trial courts are trying a case without a jury, we expect the requirements of that rule to be followed. Without such findings of fact, it is often difficult, if not impossible, properly to review trial court proceedings.

In this case, however, there is no need to remand for a finding of fact, as there is no disputed issue of fact.

The judgment of the lower court is reversed as to the award of reimbursement for taxes, insurance, and lower court costs. The lower court's award of $160 for the last month's payment under the lease contract is affirmed. Costs to defendants.

LEVIN and QUINN, JJ., concurred.