L LOYER CONSTRUCTION COMPANY v CITY OF NOVI

Docket Nos. 100620, 101091. Submitted October 12, 1988, at Detroit.
Decided September 5, 1989.

L. Loyer Construction Company was awarded a contract by the
City of Novi to make certain improvements on the city's storm
drain system. Part of the work involved the removal of mate-
rial on the bottom of a lake. It had been estimated by the city's
consulting engineer, JCK & Associates, Inc., that 36,337 cubic
yards of unsuitable material would have to be removed from
the lake's bottom of which 22,000 cubic yards would have to be
disposed of off-site and that a further 94,050 cubic yards of
material from the lake bottom would be disposed of on-site as
fill and to build a berm. The proposal for bids indicated that
there was no guaranty that the actual amounts would corre-
spond to the estimates and that payment would be made on the
actual amounts of work performed. The proposal for bid further
provided that it was presumed that the bidder had made
satisfactory investigations and was prepared to meet any soil
and water condition. The contract provided separate unit prices
for the removal of unsuitable material, disposal of unsuitable
material and the removal of suitable material. After the lake
was drained, it was found that there were 90,000 cubic yards of
unsuitable material which had to be removed and disposed of
off-site. This increase in the amount of unsuitable material
necessitated different removal methods and a different off-site
disposal area. The lack of suitable material on the lake bottom
resulted in the deletion of planned construction of the berm.
The contractor also encountered numerous aquifers which had
to be depressurized before it could proceed with the removal
work. The contractor notified the engineering firm of these
conditions and wanted to meet with the engineering firm to
discuss revised cost estimates and proposed changes in the
contract. While the engineering firm by letter acknowledged
that the actual conditions differed significantly from what had
been expected and these changed conditions necessitated a

REFERENCES
Am Jur 2d, Summary Judgment § 5.
See the Index to Annotations under Contracts; Summary Judgment.

change in the method of operation and suggested that the two meet to evaluate appropriate increased costs, the meeting between the contractor and the engineering firm resulted in a determination that the contractor was adequately compensated under the contract. L. Loyer Construction Company commenced in Oakland Circuit Court an action against the city and the engineering firm, alleging breach of contract, negligence and misrepresentation. Defendants moved for summary disposition. The trial court, Norman L. Lippitt, J., granted summary disposition on the negligence and misrepresentation claims, but denied the motion with respect to the breach of contract claim. Defendants separately sought leave to appeal. Leave to appeal was granted to each defendant, and the appeals were consolidated.

The Court of Appeals *held:*

1. Viewed as a whole, the contract clearly and unambiguously limits plaintiff's compensation to compensation based on the agreed unit prices for excavation and removal and denies plaintiff the right to any additional compensation for either the deletion of the construction of the berm or the expenses incurred in depressurizing the aquifers. Summary disposition should have been granted as to the breach of contract count.

2. The engineering firm is also entitled to summary disposition on the breach of contract count by reason of the fact that it was not a party to the contract.

Reversed and remanded.

CONTRACTS — BREACH OF CONTRACT — SUMMARY DISPOSITION — QUESTIONS OF LAW.

Summary disposition is appropriate in an action for breach of contract where the contract is unambiguous and facts giving rise to the claimed breach are not in dispute.

*M. Gary Holland,* and *George H. Cully,* for plaintiff.

*Fried & Levitt, P.C.* (by *David M. Fried* and *Dennis Watson),* for the City of Novi.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Milton Lucow* and *Mark C. Smiley),* for JCK & Associates, Inc.

Before: HOLBROOK, JR., P.J., and SAWYER and J. M. BATZER,* JJ.

J. M. BATZER, J. Defendants, the City of Novi and JCK & Associates, Inc., appeal by leave granted from orders denying their respective motions for summary disposition. The appeals were consolidated by this Court. We reverse and remand for further proceedings consistent with this opinion.

In February, 1984, defendant Novi published its advertisement for bids on the construction of a public project known as the Middle Rouge River Improvement Contracts. The project was undertaken to improve Novi's storm drain system. Plaintiff, the low bidder, was awarded the contract. Defendant JCK & Associates, Inc. was the consulting engineer for Novi.

Plaintiff and Novi entered into the construction contract in June, 1984. The contract required plaintiff to excavate material from Meadowbrook Lake in Novi. After plaintiff commenced work, it discovered that certain work required to properly complete the project varied from estimates set forth in the contract documents upon which plaintiff's bid was calculated. This litigation arises out of three specific variations: First, the contract documents estimated excavation of 36,337 cubic yards of unsuitable material, 22,000 of which would be disposed of off-site, and further excavation of 94,050 cubic yards of suitable material to be disposed of on-site as fill and to build berms. After the lake was drained, plaintiff discovered the unsuitable material was much deeper than it had expected, requiring removal and off-site disposal of 90,000 cubic yards of unsuitable material. Apparently, this large increase in the quantity of unsuit-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

able material necessitated the use of unplanned, less efficient methods of excavation and the use of a different off-site dump than originally contemplated by plaintiff and JCK. Second, the planned construction of the berm was deleted by an addendum to the contract due to the unavailability of sufficient quantities of suitable material. Third, plaintiff also encountered numerous aquifers, described by plaintiff as water that comes to the surface under pressure, resulting in additional expense to depressurize the aquifers.

In a letter dated August 24, 1984, plaintiff advised JCK of the "unanticipated" conditions and indicated that it would like to meet with JCK to "discuss these problems and submit a revised unit cost for the issuance of a change order for this contract." In a letter dated September 5, 1984, JCK acknowledged plaintiff's letter, recognized that the quantities of unsuitable material and the necessary off-site disposal would be significantly greater than expected, and agreed that the soil conditions necessitated a change in the method of operation. JCK closed by stating: "We further concur that we should meet as soon as possible to review and evaluate those appropriate increased costs." Although plaintiff and JCK met to discuss plaintiff's claim for increased charges, no agreement was reached. In a letter dated October 16, 1985, JCK advised plaintiff that, after further investigation, it determined that plaintiff's claim was not justified under the contract and stated that, although there was a significant change in quantities, the changes were only in bid items for which plaintiff had been compensated under the terms of the contract. Plaintiff thereafter filed its complaint, alleging breach of contract, negligence, and misrepresentation. The trial court denied defendants' respective motions for summary disposi-

tion on plaintiff's breach of contract claim and granted summary disposition in favor of defendants on the negligence and misrepresentation claims. Plaintiff has not appealed from the partial summary disposition entered in favor of defendants on the latter two claims.

Defendants argue that the trial court erred by failing to grant them summary disposition on the breach of contract claim. The alleged breach consisted of defendants' refusal to pay plaintiff for the increased costs incurred due to the "unanticipated" soil and water conditions. Defendant Novi claims that its refusal is proper and that plaintiff is entitled only to compensation based on the established unit price as set forth in the contract and the actual quantities of material excavated and removed.[1] Plaintiff claims entitlement to additional compensation under §§ 5.22 and 5.23 of the contract, which provide:

### 5.22 CHANGES IN THE WORK

The Owner shall have the right, without invalidating the Contract, to require changes in, additions to, or deductions from the work. Such changes shall be ordered in writing, through the Engineer. All such work shall be executed under the conditions of the Contract, and in accordance with the specifications and supplemental drawings and instructions provided by the Engineer. Any claim for extension of time on account of changes in the work shall be adjusted at the time or [sic—of?] ordering such change.

In giving instructions, the Engineer shall have authority to make minor changes, not involving

---

[1] Defendant further claims that it has already paid over the established unit price for the quantities actually excavated and removed. Plaintiff claims that, even at the established unit price, it has not been fully paid. Thus, even with our resolution of the issues presented, a dispute as to a material fact remains.

extra cost and not inconsistent with the purposes of the work, but otherwise, except in emergency endangering life or property, no extra work shall be done nor change be made unless in pursuance of a written order from the Owner, signed or countersigned by the Engineer, or a written order from the Engineer stating that the Owner has authorized the extra work or change, and no claim for payment for changes in the work shall be valid except for changes so ordered.

Adjustments, if any, in the amount to be paid the Contractor by reason of a change in the work shall be determined by one or more of the following methods:

a. For changes in quantities of items of work covered by unit prices in the Proposal and Agreement, adjustments shall be made by using as pay quantities the actual numbers of units of work done.

b. For changes other than increases or decreases in quantities of items covered by Contract unit prices, the method for adjustment of Contract price shall be one of the following:

1. By agreed unit prices to be applicable to new items of work, or

2. By an acceptable lump sum proposal from the Contractor (lump sum proposals shall be itemized to facilitate checking), or

3. Failing a satisfactory agreement under (1) or (2), the work shall be paid for on the basis of the actual cost of labor, heavy powered equipment rental, and materials, plus *15 percent* which *15 percent* shall include supervision, use of hand tools, appliances, small powered equipment, salvageable material, overhead, office and general expense and all other expenses of the Contractor, and profit.

### 5.23 CLAIMS FOR EXTRA COST

If the Contractor claims that any instructions by drawings or otherwise involve extra cost under

this Contract, he shall give the Engineer written notice thereof within a reasonable time after the receipt of such instructions, and in any event before proceeding to execute the work, except in emergencies endangering life or property, and the procedure shall then be as provided for changes in the work. No such claim shall be valid unless so made.

The trial court denied summary disposition on the basis of its belief that a disputed factual issue was presented as to whether the "unanticipated" soil and water conditions were merely changes in quantities of items of work within the meaning of § 5.22a or "other" changes such that the price should be adjusted under § 5.22b. Where a contract is unambiguous, its meaning is a question of law and the dispute is susceptible to summary disposition. *Dykema v Muskegon Piston Ring Co,* 348 Mich 129, 138; 82 NW2d 467 (1957). Viewing the contract as a whole, we find it clearly and unambiguously limits plaintiff's recovery to compensation based on the agreed contract unit price for excavation and removal and denies plaintiff additional compensation for either the deletion of the construction of the berm or the expenses incurred to depressurize the aquifers.

Const 1963, art 11, § 3 provides:

Neither the legislature nor any political subdivision of this state shall grant or authorize extra compensation to any public officer, agent or contractor after the service has been rendered or the contract entered into.

To undertake public works and improvements, governmental bodies regularly engage in the practice of advertising for sealed competitive bids.

The purpose of this . . . is to invite competition,

to guard against favoritism, improvidence, extravagance, fraud and corruption in awarding municipal contracts, to secure the best work at the lowest price practicable, and they are enacted for the benefit of property holders and taxpayers, and not for the benefit of or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest. [*Lasky v Bad Axe,* 352 Mich 272, 276; 89 NW2d 520 (1958).]

With competitively bid public contracts, there is a distinct public policy of having binding bids submitted without knowledge of the bids to be submitted by competitors. Normally, no negotiations precede the submission of bids on public contracts and the written bids represent the entire negotiations. The public and the courts must guard against tempting unscrupulous contractors to engage in a practice of submitting low bids to gain public contracts, then claiming mistake in order to fatten profits. Such tempting abuse of reformation procedures in the area of public contract could make a mockery of the system of scaled [sic] bids for government contracts. [*Woolner v Layne,* 10 Mich App 249, 255; 159 NW2d 237 (1968), rev'd on other grounds 384 Mich 316 (1970).]

In *Schneider v Ann Arbor,* 195 Mich 599; 162 NW 110 (1917), the plaintiff contractor filed a suit very similar to the instant suit against the defendant city, seeking to recover additional compensation for expenses incurred in excavation and backfilling undertaken in connection with the construction of two sewers. Plaintiff submitted a "unit prices" bid, i.e., plaintiff would be paid a certain sum for each foot of trench, the sum to vary according to the depth of the trench. The excavation depth estimated in the blueprints prepared by the city engineer turned out to be different from the actual depths. Plaintiff explained that his bids,

based on the estimates, had been very low for one of the depth classes, expecting to make up the deficiency in other classes. Plaintiff sought to recover a sum approximating the difference between what he had been paid and what he would have been paid had the actual depth been equal to those estimated in the blueprints.

The *Schneider* Court found that the exhibition of the blueprints did not constitute a warranty that the exact amount of excavation there delineated would be done in the actual carrying on of the work. The Court noted that the contract itself contemplated changes and that compensation for such changes would be at the price agreed upon per lineal foot. *Id.,* pp 604-605. The Court dismissed plaintiff's argument regarding the system of computations that he had used to calculate his bid, stating: "The fact that is important is that he [plaintiff] contracted to do the excavating in this sewer district at certain figures per lineal foot, and he contracted to do all of it, whether it be much or little." *Id.,* p 604.

We have reviewed the pertinent portions of the Middle Rouge River Improvement Contracts and conclude that the contracts unambiguously provide that: (1) Novi did not guarantee the representation as to the soil conditions; (2) the risk that soil and water conditions might be different than expected was expressly assumed by plaintiff; (3) the quantities listed in the proposal were not guaranteed to be actual quantities; (4) plaintiff assumed a duty to investigate the specific subsurface conditions as well as the site generally; (5) Novi reserved the right to change work, including the deletion of the berm; (6) all necessary dewatering, including expenses to depressurize the aquifers, was incidental to the lump sum price for a dam that was to be constructed; and (7) excavation and disposal were

items of work to be paid at the contract unit price, not at plaintiff's cost.[2]

---

[2] The pertinent portions of the Middle Rouge River Improvement Contracts provide:

INFORMATION FOR BIDDERS

\* \* \*

2.2 EXAMINATION OF CONTRACT DOCUMENTS, SITE AND FACILITIES

Bidders are required to submit their proposals upon the following express conditions:

The Bidder, prior to submitting this Proposal, shall carefully and completely examine the Plans, Specifications and all other components of the Contract Documents, and shall make a personal examination of the site of the work to acquaint himself fully with the nature of the work and with conditions to be encountered in the prosecution of the work.

Where information concerning existing conditions, including subsurface conditions, is provided or mentioned in the Contract Documents such information is provided for the convenience of the Bidder and not as a guarantee of conditions. The Bidder shall satisfy himself as to the sufficiency and representativity of such data, and shall himself make all investigations necessary so that his Proposal shall be based upon his own knowledge and estimation of conditions to be met.

\* \* \*

No plea of ignorance of any existing conditions or of failure to anticipate developements [sic] which may occur or difficulties which may arise during the course of the work due to existing conditions or to requirements of the Contract Documents shall relieve the Contractor of the obligation to fulfill in every detail all the requirements of the Contract Documents, nor shall constitute a basis for any claims whatsoever for extra compensation or extension of time for completing the work.

\* \* \*

2.5 ESTIMATE OF QUANTITIES

Quantities listed in the Proposal may be approximate and are stated solely to provide a uniform base of calculation for comparison of bids and award of contract. No guarantee is made by the Owner that actual quantities will correspond with the Proposal quantities.

Payment to the Contractor will be made for actual quantities of work performed in accordance with the Contract Documents. Proposal quantities of work to be performed or materials to be furnished may be increased, decreased or deleted as stipulated elsewhere in the Contract Documents.

\* \* \*

2.20 SOIL CONDITIONS

The Owner has secured soil borings along the route of the work. However, neither the Owner nor the Engineer make any

guarantee whatsoever relative to soil conditions. It is understood that the Bidder has made investigations satisfactory to himself and is prepared to meet whatever condition of soil and underground water that he may encounter in the work.

\* \* \*

## GENERAL SPECIFICATIONS

\* \* \*

19. REMOVAL AND DISPOSAL OF WATER

The Contractor shall provide and maintain adequate pumping and drainage facilities for removal and disposal of water from trenches or other excavation.

Where the work is in ground containing an excessive amount of water, the Contractor shall provide, install, maintain, and operate suitable and reliable pumping equipment to insure proper construction of the work.

\* \* \*

25. SOIL CONDITIONS

The Owner has secured soil borings along the route of the work. However, neither the Owner nor the Engineer make any guarantee whatsoever relative to soil condition to the accuracy or sufficiency of the soil borings. It is understood that the Contractor has made investigations satisfactory to himself and is prepased [sic] to meet whatever condition of soil and underground water that he many [sic] encounter in the work.

\* \* \*

## DETAILED SPECIFICATIONS

\* \* \*

### E.13 LAKE BOTTOM EXCAVATION

\* \* \*

E.13.03 *Measurement and Payment*

Excavated material will be measured by volume in cubic yards in its original position (bank cubic yards) as determined by the Engineer at the time of construction.

Lake bottom excavation will be paid for at the contract unit price for actual units of work done.

\* \* \*

### E.14 EXCAVATING UNSUITABLE MATERIAL

\* \* \*

E.14.03 *Measurement and Payment*

Unsuitable material will be measured by volume in cubic yards in its original position (bank cubic yards) as determined by the Engineer at the time of construction.

Excavating unsuitable material will be paid for at the contract unit price for actual units of work done.

\* \* \*

### M.11 DAM CONSTRUCTION

M.11.01 *Description of Work*

"Dam Construction" shall include furnishing all necessary labor, materials, equipment, incidental and collateral work and

We do not find *Zontelli & Sons, Inc v City of Nashwawk,* 373 NW2d 744, 753 (Minn, 1985), relied upon by plaintiff, applicable. The *Zontelli* court found that the contractor should be compensated at "actual cost" as opposed to "unit price" because the case presented was "an extreme case, however, with all kinds of overruns and otherwise changed conditions, the extent and effect of which are so unusual as not to have been contemplated by the parties at the time of contracting." The court believed limiting compensation to unit price would raise questions of unconscionability. *Id.* In the instant case, however, the contract indicates that the parties not only contemplated variations in soil and water conditions, but additionally contemplated that the unit price method of payment would be used to measure payment for any such variations.

We agree with the analysis of the Oregon Supreme Court in the analogous case of *Inland Construction Co v City of Pendleton,* 116 Or 668, 679-

---

expense required to completely construct the Meadowbrook Lake Dam as shown on the plans and described within the contract documents.

M.11.02 *Materials, Equipment and Construction Methods*

\* \* \*

All necessary dewatering shall be incidental to the lump sump [sic] price.

Hyrdaulic [sic] dredging has been listed as an acceptable excavation method for Meadowbrook Lake. It [sic] the contractor chooses this method of excavation, any extra expense required for construction of the dam, including cofferdams or temporary dewatering equipment of any kind shall be considered incidental to the lump sum price for the dam.

M.11.03 *Basis of Payment*

The lump sum price for "Concrete Dam" shall be payment in full for all labor, materials, equipment, incidental and collateral work and expense required to complete installation as specified.

680; 242 P 842 (1926), where the plaintiff contractor sought additional compensation for excavation of substantially more rock than the amount estimated in the plans and specifications. The Oregon court held:

> The city made certain test borings which were made known to plaintiff. There is no contention that the city misrepresented to the contractor the nature or character of the ground conditions as disclosed by these borings. The tests made were for the plaintiff's inspection. It had as much opportunity as the city to ascertain the amount of rock required to be excavated. The estimates were made for "comparison of bids," and cannot be considered either as representations or warranties. The contractor assumed the risk. The mere fact that more rock was encountered than anticipated is a hazard of the business in which plaintiff is engaged.
>
> \* \* \*
>
> We agree with the conclusion reached by the learned trial judge that the work performed was within the contemplation of the parties, and for that reason the contract price is the measure of plaintiff's compensation. [Citations omitted.]

Plaintiff does not claim fraud or misrepresentation by Novi in the conditions shown in the plans and specifications.[3] Under a plain reading of the contract, plaintiff is not entitled to additional compensation for the deletion of the berm construction

---

[3] Cf. *Earl L Reamer Co v Swartz Creek,* 76 Mich App 227, 235; 256 NW2d 447 (1977), where this Court allowed recovery for additional costs because the evidence clearly showed that the defendant city possessed material information regarding underground structures which was not given to the plaintiff contractor before bidding on the public project. In his concurring opinion, Judge BEASLEY warns that the decision is limited to the unusual factual situation presented, "lest [the] result be interpreted as precedent for encouraging public contractors to seek to convert their fixed price contracts to a kind of cost plus fee contract by the device of claiming the public body had information which it did not disclose to the bidder." *Id.,* pp 235-236.

or the expenses resulting from the artesian conditions. Any adjustments in pay as a result of the increased excavation of unsuitable material are to be made pursuant to the contract unit price. Because the record is not entirely clear as to whether plaintiff received payment for the actual quantities of work done, we remand this case to the trial court for a determination as to what amounts, if any, are due plaintiff, such adjustments to be made pursuant to § 5.22 of the contract.

The remaining issues raised on this appeal are essentially rendered moot by the foregoing opinion and decision. We will only briefly address them.

Defendants argue that the trial court erred in considering the September 5, 1984, letter from JCK to plaintiff to construe the contract as ambiguous. The trial court's opinion does not clearly indicate whether the trial court considered the letter in disposing of the motion. However, our Supreme Court has held that where a contract might be ambiguous extrinsic evidence is admissible to determine whether an ambiguity exists. *Goodwin, Inc v Orsen E Coe Pontiac, Inc,* 392 Mich 195, 209-210; 220 NW2d 664 (1974).

We do not think the letter creates an ambiguity. Under the terms of the contract, extra work for which additional compensation would be paid could only be done under a written order from Novi or a written order from the engineer stating that Novi had authorized the extra work. JCK had no authority to instruct that extra work involving extra costs could be done, (except in an emergency endangering life or property). Indeed, plaintiff's actions indicate that plaintiff understood that written authorization from Novi was required before Novi would be held liable for extra compensation. Novi expressly refused to issue such a written order (on the basis that a change in work requir-

ing additional compensation under the contract had never occurred). Even considering the letter in a light most favorable to plaintiff, we do not find the contract to be ambiguous. See *Schneider, supra,* pp 606-611, where the Court refused to find a material issue of fact created as to whether the board had waived its right to insist upon a written order as a prerequisite to payment of additional compensation.

Finally, JCK was also entitled to summary disposition on plaintiff's claim for breach of contract on the additional ground that JCK was not a party to the contract between plaintiff and Novi. MCL 600.1405; MSA 27A.1405; *Rieth-Riley Construction Co, Inc v Dep't of Transportation,* 136 Mich App 425; 357 NW2d 62 (1984), lv den 422 Mich 911 (1985).

Reversed and remanded for further proceedings consistent with this opinion.