NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0289n.06

No. 12-1686

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Mar 22, 2013*
DEBORAH S. HUNT, Clerk

THE CREELGROUP, INC.,                        )
                                             )
    Plaintiff-Appellant,                 )      ON APPEAL FROM THE
                                             )      UNITED STATES DISTRICT
    v.                                   )      COURT FOR THE EASTERN
                                             )      DISTRICT OF MICHIGAN
NGS AMERICAN, INC., Employee Benefit Plan    )
Trust; TRUSTCO HOLDINGS, INC.; SCOTT         )
MCLELLAN,                                    )
                                             )
    Defendants-Appellees.                )
                                             )

BEFORE: GILMAN, ROGERS, and SUTTON, Circuit Judges.

PER CURIAM. The Creelgroup claims that NGS American breached its contract with Creelgroup, under which Creelgroup agreed to provide broker services in exchange for a fee. NGS denies that Creelgroup was ever party to the contract, which was between NGS and Oakwood Healthcare. NGS moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(6). The district court granted NGS's motion and denied Creelgroup's motion for reconsideration. Because Creelgroup was never a party to the contract between Oakwood and NGS, we agree with the district court that Creelgroup has failed to state a claim for relief.

Creelgroup is a healthcare-consulting firm and broker, which provides its services to employers with self-funded medical benefit plans. Creelgroup assists its clients with selection and oversight of third-party plan administrators, such as NGS American, Inc. In 2005, Creelgroup

brokered a deal in which NGS administered Oakwood's healthcare plan. That deal was memorialized in an agreement. In a subsequent amendment to that agreement, NGS agreed to remit to Creelgroup a commission of two dollars per employee per month under the amended terms of its contract with Oakwood.

Creelgroup was not mentioned in the original agreement between Oakwood and NGS, the "Administrative Services Agreement," which came into effect on January 1, 2005. *See* R.12-1. Later that year, NGS and Oakwood entered into an amendment, the "First Amendment to Service Agreement." *See* R. 12-2. This "First Amendment" provided for the commission to be paid by NGS to Creelgroup. The First Amendment indicates that the "Product" is "Medical Administration" and the "Fee or Commission" is "$2.00 [per employee per month]." *Id.* at 14. Appendix A indicates that "IN THE EVENT FEES OR COMMISSIONS ARE PAYABLE TO AN AGENT BY NGS UNDER THIS ADDENDUM, SUCH FEES OR COMMISSIONS WILL BE MAILED FIRST CLASS MAIL TO:" and Creelgroup's address is provided. *Id.* at 15 (caps in original). The signature page also states the following:

> By the signatures of their duly authorized officers or other persons, . . . [Oakwood agrees] to pay NGS the fees set forth in Appendix A of the Agreement, and acknowledge and approve as reasonable the fees and commissions, if any, paid to NGS *and any designated agent/broker* with respect to the Plan related insurance products listed above.

*Id.* (emphasis added). NGS, Oakwood, and Creelgroup representatives each signed this page.

NGS and Oakwood renewed their agreement in 2008 for an additional thirty-six months under the "Second Amendment to Service Agreement," which, as in the First Agreement, designated

Creelgroup as the commission agent. *See* R. 12-3. Creelgroup expected to receive commissions for

the entire thirty-six month period from January 2, 2008 to December 31, 2010. However, Creelgroup

stopped receiving payments from NGS in October 2008 after Geoff Brieden, Creelgroup's national

sales manager, left the company to found his own healthcare consultancy, Kane Atwood Group

Services, and took Oakwood's business with him.[1] NGS and Oakwood subsequently negotiated a

new agreement, which replaced Creelgroup with Kane Atwood as the agent designated to receive

the commissions. *See* R. 13-1.

Creelgroup filed suit in federal district court alleging, among other claims, breach of contract

against NGS and Trustco.[2] NGS moved to dismiss, and the district court granted NGS's motion.

*The Creelgroup, Inc. v. NGS Am., Inc.*, No. 11-CV-13798, 2012 U.S. Dist. LEXIS 52958 (E.D.

Mich. Apr. 16, 2012). The district court held that Creelgroup did not have a contractual relationship

---

[1] Prior to his departure, Creelgroup employed Geoff Brieden, who was previously an employee of NGS, as its national sales manager. One of Brieden's duties was to provide in-person services to Oakwood. The employment relationship between Creelgroup and Brieden ended, and Brieden formed Kane Atwood, which subsequently replaced Creelgroup as NGS's commission agent. That replacement was the subject of a separate lawsuit in federal district court, *The Creelgroup v. Brieden*, No. 09-12493, 2010 U.S. Dist. LEXIS 76777 (E.D. Mich. July 29, 2010), which the parties eventually resolved and dismissed by stipulation.

Creelgroup contends that Scott McCellan, NGS's Vice President, began working for Kane Atwood while still employed at NGS and helped Brieden steal Oakwood's business from Creelgroup. Creelgroup notes that Brieden established a Kane Atwood email address for McClellan during his employment at NGS. Creelgroup alleges that McClellan "intentionally, willfully, unlawfully, without justification, with malice, and in bad faith, induced, contributed to, participated in, and caused the unlawful breach of the 2005 Agreement and the 2008 Second Amendment among Oakwood, NGS CoreSource and Creelgroup." First Amended Complaint, R. 11 at 10.

[2] It is unclear from the record, and it was unclear to the district court, why TrustCo Holdings, Inc. (a separate entity that controls the management and operation of NGS) is a named defendant in this suit. *See The Creelgroup*, 2012 U.S. Dist. LEXIS 52958, at *2 n.1.

with NGS because there was no mutuality of obligation under Michigan law. The district court held that "[t]he contracts between Oakwood and NGS do not create an obligation for Creel[group] to discharge." *Id.* at *9. The court emphasized that "[n]othing in the language of the contract creates an obligation for Creel[group] to do anything." *Id.* Finally, the district court considered *sua sponte* the argument that Creelgroup could enforce the terms of a contract between NGS and Oakwood as a third-party intended beneficiary, but concluded that Creelgroup was at most an incidental beneficiary lacking enforcement authority. *Id.* at *10-11.

Creelgroup moved for reconsideration, but the district court denied that motion in a written order in which it noted that Creelgroup's claim failed not because the contracts lacked consideration, but because Creelgroup "was not a party to the 2005 and 2008 contracts between Oakwood and NGS, and . . . the contracts did not create an obligation for Creel[group] to discharge." *The Creelgroup, Inc. v. NGS Am., Inc.*, No. 11-CV-13798, 2012 U.S. Dist. LEXIS 81285, at *3 (E.D. Mich. June 12, 2012). Creelgroup now appeals.

We agree that Creelgroup fails to state a claim for relief because it has not pleaded sufficient facts to show that it was a party to the contract. We review the district court's grant of the motion to dismiss *de novo*. *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010). To survive a motion to dismiss, Creelgroup must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

- 4 -

678 (2009). While the court must accept all well-pleaded factual allegations as true and construe the complaint in the light most favorable to Creelgroup, it need not accept unwarranted factual inferences. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010).

In this diversity case, we apply the substantive law of Michigan. *Anton v. Nat'l Union Fire Ins. Co.*, 634 F.3d 364, 367 (6th Cir. 2011). Under Michigan law, a breach-of-contract claim requires that the plaintiff establish that he or she was a party to the contract at issue. *See McInerney v. Detroit Trust Co.*, 271 N.W. 545 (Mich. 1937); *Hallett v. Gordon*, 87 N.W. 261, 262 (Mich. 1901); *L. Loyer Constr. Co. v. Novi*, 446 N.W.2d 364, 370 (Mich. Ct. App. 1989). Creelgroup fails to make such a showing here.

Although Creelgroup rightly asserts that the relevant question is whether it is "plausible on its face that Creelgroup pleaded the existence of a contract with NGS," we must review the contract itself in addition to the pleadings. Creelgroup cannot survive a motion to dismiss, even if it has pleaded the existence of a contract, if the written instrument plainly contradicts the pleadings because "when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Williams v. CitiMortgage, Inc.*, No. 11-3431, 2012 U.S. App. LEXIS 18718, at *10 (6th Cir. Sept. 14, 2012) (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998)); *see Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) ("Indeed, in the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), Fed. R. Civ. P., the exhibit prevails.").

A close reading of the contract reveals that Creelgroup was never a party to the contract. The 2005 First Amendment and the 2008 Second Amendment indicate only that Creelgroup consented to receive a fee of two dollars per employee per month for previously brokering the deal between NGS and Oakwood, and Creelgroup raises no claim that at the time it brokered the deal, it had entered into a fee agreement. The contract as a whole reinforces the conclusion that this was a contract between NGS and Oakwood only. *See Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 781 n.11 (Mich. 2003) ("We read contracts as a whole, giving harmonious effect, if possible, to each word and phrase."). The Second Amendment's language refers only to two parties. *See* R. 12-3 at 1 ("This Agreement may be discontinued . . . [b]y *either party* . . . [and] *either party* shall be free to seek to enforce its rights under the Agreement.") (emphasis added). The 2005 Agreement also states: "This Agreement may not be amended without the express written consent of *both parties*." R. 12-1 at 18 (emphasis added). It is clear that Creelgroup was not a party to the contract because the 2005 Agreement requires only Oakwood and NGS's written consent to legally amend its terms. As a non-party to the agreement, Creelgroup cannot state a claim for relief.

Creelgroup alternatively argues that a contract can be implied by the conduct of the parties, relying on this court's decision in *Contship Containerlines v. Howard Industries*, 309 F.3d 910, 912 (6th Cir. 2002). That case is inapposite, however, because under Michigan law, an implied contract can exist only if there is no express contract. *Martin v. E. Lansing Sch. Dist.*, 483 N.W.2d 656, 661 (Mich. Ct. App. 1992). Here, there was an express written contract governing the agreement, even if Creelgroup was not party to that agreement. An implied contract also requires that the parties have

a mutual intention to contract.  *Erickson v. Goodell Oil Co.*, 180 N.W.2d 798, 800 (Mich. 1970).

Creelgroup has not pleaded sufficient facts to show that NGS had any intention to form a contract

with Creelgroup.  Creelgroup cannot survive the motion to dismiss on an implied-contract theory.

Finally, Creelgroup cannot enforce a potential right to a broker's commission as an intended

third-party beneficiary of the contract.  Although Creelgroup did not raise the issue below and does

not raise it on appeal, the district court considered the argument *sua sponte*.  We agree with the

district court that Creelgroup was at best an incidental beneficiary of the contract.

The district court's judgment is affirmed.